Summary
7/7/2016 4:12:59 PM

Differences exist between documents.

| **New Document:** | **Old Document:** |
|---|---|
| 15-420_new | 15-420 |
| 23 pages (174 KB) | 23 pages (177 KB) |
| 7/7/2016 4:12:51 PM | 7/7/2016 4:12:51 PM |
| Used to display results. | |

Get started: first change is on page 8.

No pages were deleted

**How to read this report**

Highlight indicates a change.
Deleted indicates deleted content.
▲ indicates pages were changed.
⬌ indicates pages were moved.

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* BRYANT

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 15–420.   Argued April 19, 2016—Decided June 13, 2016

In response to the high incidence of domestic violence against Native American women, Congress enacted a felony offense of domestic assault in Indian country by a habitual offender.  18 U. S. C. §117(a). Section 117(a)(1) provides that any person who "commits a domestic assault within . . . Indian country" and who has at least two prior final convictions for domestic violence rendered "in Federal, State, or Indian tribal court proceedings . . . shall be fined . . . , imprisoned for a term of not more than 5 years, or both . . . ."  Having two prior tribal-court convictions for domestic violence crimes is thus a predicate of the new offense.

This case raises the question whether §117(a)'s inclusion of tribal-court convictions as predicate offenses is compatible with the Sixth Amendment's right to counsel.  The Sixth Amendment guarantees indigent defendants appointed counsel in any state or federal criminal proceeding in which a term of imprisonment is imposed, *Scott* v. *Illinois*, 440 U. S. 367, 373–374, but it does not apply in tribal-court proceedings, see *Plains Commerce Bank* v. *Long Family Land & Cattle Co.*, 554 U. S. 316, 337.  The Indian Civil Rights Act of 1968 (ICRA), which governs tribal-court proceedings, accords a range of procedural safeguards to tribal-court defendants "similar, but not identical, to those contained in the Bill of Rights and the Fourteenth Amendment," *Santa Clara Pueblo* v. *Martinez*, 436 U. S. 49, 57.  In particular, ICRA provides indigent defendants with a right to appointed counsel only for sentences exceeding one year.  25 U. S. C. §1302(c)(2).  ICRA's right to counsel therefore is not coextensive with the Sixth Amendment right.

This Court has held that a conviction obtained in state or federal court in violation of a defendant's Sixth Amendment right to counsel

cannot be used in a subsequent proceeding "to support guilt or en-
hance punishment for another offense." *Burgett* v. *Texas*, 389 U. S.
109, 115. Use of a constitutionally infirm conviction would cause "the
accused in effect [to] suffe[r] anew from the [prior] deprivation of [his]
Sixth Amendment right*." Ibid. Burgett*'s principle was limited by
the Court's holding in *Nichols* v. *United States*, 511 U. S. 738, that
"an uncounseled misdemeanor conviction, valid under *Scott* because
no prison term was imposed, is also valid when used to enhance pun-
ishment at a subsequent conviction," *id.,* at 748–749.

Respondent Michael Bryant, Jr., has multiple tribal-court convic-
tions for domestic assault. When convicted, Bryant was indigent and
was not appointed counsel. For most of his convictions, he was sen-
tenced to terms of imprisonment not exceeding one year's duration.
Because of his short prison terms, the prior tribal-court proceedings
complied with ICRA, and his convictions were therefore valid when
entered. Based on domestic assaults he committed in 2011, Bryant
was indicted on two counts of domestic assault by a habitual offender,
in violation of §117(a). Represented in federal court by appointed
counsel, he contended that the Sixth Amendment precluded use of his
prior, uncounseled, tribal-court misdemeanor convictions to satisfy
§117(a)'s predicate-offense element and moved to dismiss the indict-
ment. The District Court denied the motion; Bryant pleaded guilty,
reserving the right to appeal. The Ninth Circuit reversed the convic-
tion and directed dismissal of the indictment. It comprehended that
Bryant's uncounseled tribal-court convictions were valid when en-
tered because the Sixth Amendment right to counsel does not apply
in tribal-court proceedings. It held, however, that Bryant's tribal-
court convictions could not be used as predicate convictions within
§117(a)'s compass because they would have violated the Sixth
Amendment had they been rendered in state or federal court.

*Held*: Because Bryant's tribal-court convictions occurred in proceedings
that complied with ICRA and were therefore valid when entered, use
of those convictions as predicate offenses in a §117(a) prosecution
does not violate the Constitution.

*Nichols* instructs that convictions valid when entered retain that
status when invoked in a subsequent proceeding. *Nichols* reasoned
that "[e]nhancement statutes . . . do not change the penalty imposed
for the earlier conviction"; rather, repeat-offender laws "penaliz[e] on-
ly the last offense committed by the defendant." 511 U. S., at 747.
Bryant's sentence for violating §117(a) punishes his most recent acts
of domestic assault, not his prior crimes prosecuted in tribal court.
He was denied no right to counsel in tribal court, and his Sixth
Amendment right was honored in federal court. Bryant acknowledg-
es that *Nichols* would have allowed reliance on uncounseled tribal-

court convictions resulting in fines to satisfy §117(a)'s prior-crimes predicate. But there is no cause to distinguish for §117(a) purposes between fine-only tribal-court convictions and valid but uncounseled tribal-court convictions resulting in imprisonment for a term not exceeding one year. Neither violates the Sixth Amendment. Bryant is not aided by *Burgett*. A defendant convicted in tribal court suffered no Sixth Amendment violation in the first instance, so he cannot "suffe[r] anew" from a prior deprivation in his federal prosecution.

Bryant also invokes the Due Process Clause of the Fifth Amendment to support his assertion that tribal-court judgments should not be used as predicate offenses under §117(a). ICRA, however, guarantees "due process of law," accords other procedural safeguards, and permits a prisoner to challenge the fundamental fairness of tribal court proceedings in federal habeas corpus proceedings. Because proceedings in compliance with ICRA sufficiently ensure the reliability of tribal-court convictions, the use of those convictions in a federal prosecution does not violate a defendant's due process right. Pp. 12–16.

769 F. 3d 671, reversed and remanded.

GINSBURG, J., delivered the opinion for a unanimous Court. THOMAS, J., filed a concurring opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

―――――

No. 15–420

―――――

## UNITED STATES, PETITIONER *v.* MICHAEL BRYANT, JR.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[June 13, 2016]

JUSTICE GINSBURG delivered the opinion of the Court.

In response to the high incidence of domestic violence against Native American women, Congress, in 2005, enacted 18 U. S. C. §117(a), which targets serial offenders. Section 117(a) makes it a federal crime for any person to "commi[t] a domestic assault within . . . Indian country" if the person has at least two prior final convictions for domestic violence rendered "in Federal, State, or Indian tribal court proceedings." See Violence Against Women and Department of Justice Reauthorization Act of 2005 (VAWA Reauthorization Act), Pub. L. 109–162, §§901, 909, 119 Stat. 3077, 3084.[1] Respondent Michael Bryant, Jr., has multiple tribal-court convictions for domestic assault. For most of those convictions, he was sentenced to terms of imprisonment, none of them exceeding one year's duration. His tribal-court convictions do not count for §117(a) purposes, Bryant maintains, because he was uncounseled

―――――

[1] "Indian country" is defined in 18 U. S. C. §1151 to encompass all land within any Indian reservation under federal jurisdiction, all dependent Indian communities, and all Indian allotments, the Indian titles to which have not been extinguished.

in those proceedings.

The Sixth Amendment guarantees indigent defendants, in state and federal criminal proceedings, appointed counsel in any case in which a term of imprisonment is imposed. *Scott* v. *Illinois*, 440 U. S. 367, 373–374 (1979). But the Sixth Amendment does not apply to tribal-court proceedings. See *Plains Commerce Bank* v. *Long Family Land & Cattle Co.*, 554 U. S. 316, 337 (2008). The Indian Civil Rights Act of 1968 (ICRA), Pub. L. 90–284, 82 Stat. 77, 25 U. S. C. §1301 *et seq.*, which governs criminal proceedings in tribal courts, requires appointed counsel only when a sentence of more than one year's imprisonment is imposed. §1302(c)(2). Bryant's tribal-court convictions, it is undisputed, were valid when entered. This case presents the question whether those convictions, though uncounseled, rank as predicate offenses within the compass of §117(a). Our answer is yes. Bryant's tribal-court convictions did not violate the Sixth Amendment when obtained, and they retain their validity when invoked in a §117(a) prosecution. That proceeding generates no Sixth Amendment defect where none previously existed.

## I

### A

"[C]ompared to all other groups in the United States," Native American women "experience the highest rates of domestic violence." 151 Cong. Rec. 9061 (2005) (remarks of Sen. McCain). According to the Centers for Disease Control and Prevention, as many as 46% of American Indian and Alaska Native women have been victims of physical violence by an intimate partner. Centers for Disease Control and Prevention, National Center for Injury Prevention and Control, M. Black et al., National Intimate Partner and Sexual Violence Survey 2010 Summary Report 40 (2011) (Table 4.3), online at http://www.cdc.gov/ ViolencePrevention/pdf/NISVS_report2010-a.pdf (all Internet

materials as last visited June 9, 2016). American Indian and Alaska Native women "are 2.5 times more likely to be raped or sexually assaulted than women in the United States in general." Dept. of Justice, Attorney General's Advisory Committee on American Indian and Alaska Native Children Exposed to Violence, Ending Violence So Children Can Thrive 38 (Nov. 2014), online at https:// www.justice.gov/sites/default/files/defendingchildhood/ pages/attachments/2015/03/23/ending_violence_so_children_ can_thrive.pdf. American Indian women experience battery "at a rate of 23.2 per 1,000, compared with 8 per 1,000 among Caucasian women," and they "experience 7 sexual assaults per 1,000, compared with 4 per 1,000 among Black Americans, 3 per 1,000 among Caucasians, 2 per 1,000 among Hispanic women, and 1 per 1,000 among Asian women." VAWA Reauthorization Act, §901, 119 Stat. 3077.

As this Court has noted, domestic abusers exhibit high rates of recidivism, and their violence "often escalates in severity over time." *United States* v. *Castleman*, 572 U. S. ___, ___ (2014) (slip op., at 2). Nationwide, over 75% of female victims of intimate partner violence have been previously victimized by the same offender, Dept. of Justice, Bureau of Justice Statistics, S. Catalano, Intimate Partner Violence 1993–2010, p. 4 (rev. 2015) (Figure 4), online at http://www.bjs.gov/content/pub/pdf/ipv9310.pdf, often multiple times, Dept. of Justice, National Institute of Justice, P. Tjaden & N. Thoennes, Extent, Nature, and Consequences of Intimate Partner Violence, p. iv (2000), online at https://www.ncjrs.gov/pdffiles1/nij/181867.pdf ("[W]omen who were physically assaulted by an intimate partner averaged 6.9 physical assaults by the same partner."). Incidents of repeating, escalating abuse more than occasionally culminate in a fatal attack. See VAWA Reauthorization Act, §901, 119 Stat. 3077–3078 ("[D]uring the period 1979 through 1992, homicide was the third leading

cause of death of Indian females aged 15 to 34, and 75 percent were killed by family members or acquaintances.").

The "complex patchwork of federal, state, and tribal law" governing Indian country, *Duro* v. *Reina*, 495 U. S. 676, 680, n. 1 (1990), has made it difficult to stem the tide of domestic violence experienced by Native American women. Although tribal courts may enforce the tribe's criminal laws against Indian defendants, Congress has curbed tribal courts' sentencing authority. At the time of §117(a)'s passage, ICRA limited sentences in tribal court to a maximum of one year's imprisonment. 25 U. S. C. §1302(a)(7) (2006 ed.).[2] Congress has since expanded tribal courts' sentencing authority, allowing them to impose up to three years' imprisonment, contingent on adoption of additional procedural safeguards. 124 Stat. 2279–2280 (codified at 25 U. S. C. §1302(a)(7)(C), (c)).[3] To date, however, few tribes have employed this enhanced sentencing authority. See Tribal Law and Policy Inst., Implementation Chart: VAWA Enhanced Jurisdiction and TLOA Enhanced Sentencing, online at http://www.tribal-institute.org/download/VAWA/VAWAImplementationChart.pdf.[4]

––––––––––

[2] Until 1986, ICRA permitted sentences of imprisonment up to only six months. See 100 Stat. 3207–146.

[3] Among the additional safeguards attending longer sentences is the unqualified right of an indigent defendant to appointed counsel. 25 U. S. C. §1302(c)(1), (2).

[4] Tribal governments generally lack criminal jurisdiction over non-Indians who commit crimes in Indian country. See *Oliphant* v. *Suquamish Tribe*, 435 U. S. 191, 195 (1978). In the Violence Against Women Reauthorization Act of 2013, Congress amended ICRA to authorize tribal courts to "exercise special domestic violence criminal jurisdiction" over certain domestic violence offenses committed by a non-Indian against an Indian. Pub. L. 113–4, §904, 127 Stat. 120–122 (codified at 25 U. S. C. §1304). Tribal courts' exercise of this jurisdiction requires procedural safeguards similar to those required for imposing on Indian defendants sentences in excess of one year, including the unqualified right of an indigent defendant to appointed counsel. See §1304(d). We express no view on the validity of those provisions.

States are unable or unwilling to fill the enforcement gap. Most States lack jurisdiction over crimes committed in Indian country against Indian victims. See *United States* v. *John*, 437 U. S. 634, 651 (1978). In 1953, Congress increased the potential for state action by giving six States "jurisdiction over specified areas of Indian country within the States and provid[ing] for the [voluntary] assumption of jurisdiction by other States." *California* v. *Cabazon Band of Mission Indians*, 480 U. S. 202, 207 (1987) (footnote omitted). See Act of Aug. 15, 1953, Pub. L. 280, 67 Stat. 588 (codified, as amended, at 18 U. S. C. §1162 and 25 U. S. C. §§1321–1328, 1360). States so empowered may apply their own criminal laws to "offenses committed by or against Indians within all Indian country within the State." *Cabazon Band of Mission Indians*, 480 U. S., at 207; see 18 U. S. C. §1162(a). Even when capable of exercising jurisdiction, however, States have not devoted their limited criminal justice resources to crimes committed in Indian country. Jimenez & Song, Concurrent Tribal and State Jurisdiction Under Public Law 280, 47 Am. U. L. Rev. 1627, 1636–1637 (1998); Tribal Law and Policy Inst., S. Deer, C. Goldberg, H. Valdez Singleton, & M. White Eagle, Final Report: Focus Group on Public Law 280 and the Sexual Assault of Native Women 7–8 (2007), online at http://www.tribal-institute.org/download/Final%20280%20FG%20Report.pdf.

That leaves the Federal Government. Although federal law generally governs in Indian country, Congress has long excluded from federal-court jurisdiction crimes committed by an Indian against another Indian. 18 U. S. C. §1152; see *Ex parte Crow Dog*, 109 U. S. 556, 572 (1883) (requiring "a clear expression of the intention of Congress" to confer federal jurisdiction over crimes committed by an Indian against another Indian). In the Major Crimes Act, Congress authorized federal jurisdiction over enumerated grave criminal offenses when the perpetrator is an Indian and

the victim is "another Indian or other person," including murder, manslaughter, and felony assault. §1153. At the time of §117(a)'s enactment, felony assault subject to federal prosecution required "serious bodily injury," §113(a)(6) (2006 ed.), meaning "a substantial risk of death," "extreme physical pain," "protracted and obvious disfigurement," or "protracted loss or impairment of the function of a bodily member, organ, or mental faculty." §1365(h)(3) (incorporated through §113(b)(2)).[5]  In short, when §117(a) was before Congress, Indian perpetrators of domestic violence "escape[d] felony charges until they seriously injure[d] or kill[ed] someone."  151 Cong. Rec. 9062 (2005) (remarks of Sen. McCain).

As a result of the limitations on tribal, state, and federal jurisdiction in Indian country, serial domestic violence offenders, prior to the enactment of §117(a), faced at most a year's imprisonment per offense—a sentence insufficient to deter repeated and escalating abuse. To ratchet up the punishment of serial offenders, Congress created the federal felony offense of domestic assault in Indian country by a habitual offender. §117(a) (2012 ed.); see No. 12–30177 (CA9, July 6, 2015), App. to Pet. for Cert. 41a (Owens, J., dissenting from denial of rehearing en banc) ("Tailored to the unique problems . . . that American Indian and Alaska Native Tribes face, §117(a) provides felony-level punishment for serial domestic violence offenders, and it represents the first true effort to remove these recidivists from the communities that they repeatedly

––––––––––––

[5] Congress has since expanded the definition of felony assault to include "[a]ssault resulting in substantial bodily injury to a spouse[,] . . . intimate partner, [or] dating partner" and "[a]ssault of a spouse, intimate partner, or dating partner by strangling, suffocating, or attempting to strangle or suffocate."  Violence Against Women Reauthorization Act of 2013, §906, 127 Stat. 124 (codified at 18 U. S. C. §113(a)(7), (8)).  The "substantial bodily injury" requirement remains difficult to satisfy, as it requires "a temporary but substantial disfigurement" or "a temporary but substantial loss or impairment of the function of any bodily member, organ, or mental faculty."  §113(b)(1).

terrorize."). The section provides in pertinent part:

> "Any person who commits a domestic assault within . . . Indian country and who has a final conviction on at least 2 separate prior occasions in Federal, State, or Indian tribal court proceedings for offenses that would be, if subject to Federal jurisdiction any assault, sexual abuse, or serious violent felony against a spouse or intimate partner . . . shall be fined . . . , imprisoned for a term of not more than 5 years, or both . . . ." §117(a)(1).[6]

Having two prior convictions for domestic violence crimes—including tribal-court convictions—is thus a predicate of the new offense.

## B

This case requires us to determine whether §117(a)'s inclusion of tribal-court convictions is compatible with the Sixth Amendment's right to counsel. The Sixth Amendment to the U. S. Constitution guarantees a criminal defendant in state or federal court "the Assistance of Counsel for his defence." See *Gideon* v. *Wainwright*, 372 U. S. 335, 339 (1963). This right, we have held, requires appointment of counsel for indigent defendants whenever a sentence of imprisonment is imposed. *Argersinger* v. *Hamlin*, 407 U. S. 25, 37 (1972). But an indigent defendant has no constitutional right to appointed counsel if his conviction results in a fine or other noncustodial punishment. *Scott*, 440 U. S., at 373–374.

"As separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by

—————

[6] Section 117(a) has since been amended to include as qualifying predicate offenses, in addition to intimate-partner crimes, "assault, sexual abuse, [and] serious violent felony" offenses committed "against a child of or in the care of the person committing the domestic assault." 18 U. S. C. §117(a) (Supp. II 2014).

those constitutional provisions framed specifically as limitations on federal or state authority." *Santa Clara Pueblo* v. *Martinez*, 436 U. S. 49, 56 (1978). The Bill of Rights, including the Sixth Amendment right to counsel, therefore, does not apply in tribal-court proceedings. See *Plains Commerce Bank*, 554 U. S., at 337.

In ICRA, however, Congress accorded a range of procedural safeguards to tribal-court defendants "similar, but not identical, to those contained in the Bill of Rights and the Fourteenth Amendment." *Martinez*, 436 U. S., at 57; see *id.,* at 62–63 (ICRA "modified the safeguards of the Bill of Rights to fit the unique political, cultural, and economic needs of tribal governments"). In addition to other enumerated protections, ICRA guarantees "due process of law," 25 U. S. C. §1302(a)(8), and allows tribal-court defendants to seek habeas corpus review in federal court to test the legality of their imprisonment, §1303.

The right to counsel under ICRA is not coextensive with the Sixth Amendment right. If a tribal court imposes a sentence in excess of one year, ICRA requires the court to accord the defendant "the right to effective assistance of counsel at least equal to that guaranteed by the United States Constitution," including appointment of counsel for an indigent defendant at the tribe's expense. §1302(c)(1), (2). If the sentence imposed is no greater than one year, however, the tribal court must allow a defendant only the opportunity to obtain counsel "at his own expense." §1302(a)(6). In tribal court, therefore, unlike in federal or state court, a sentence of imprisonment up to one year may be imposed without according indigent defendants the right to appointed counsel.

The question here presented: Is it permissible to use uncounseled tribal-court convictions—obtained in full compliance with ICRA—to establish the prior-crimes predicate of §117(a)? It is undisputed that a conviction obtained in violation of a defendant's Sixth Amendment

right to counsel cannot be used in a subsequent proceeding "either to support guilt or enhance punishment for another offense." *Burgett* v. *Texas*, 389 U. S. 109, 115 (1967). In *Burgett*, we held that an uncounseled felony conviction obtained in state court in violation of the right to counsel could not be used in a subsequent proceeding to prove the prior-felony element of a recidivist statute. To permit such use of a constitutionally infirm conviction, we explained, would cause "the accused in effect [to] suffe[r] anew from the [prior] deprivation of [his] Sixth Amendment right." *Ibid*.; see *United States* v. *Tucker*, 404 U. S. 443, 448 (1972) (invalid, uncounseled prior convictions could not be relied upon at sentencing to impose a longer term of imprisonment for a subsequent conviction); cf. *Loper* v. *Beto*, 405 U. S. 473, 483–484 (1972) (plurality opinion) ("use of convictions constitutionally invalid under *Gideon* v. *Wainwright* to impeach a defendant's credibility deprives him of due process of law" because the prior convictions "lac[k] reliability").

In *Nichols* v. *United States*, 511 U. S. 738 (1994), we stated an important limitation on the principle recognized in *Burgett*. In the case under review, Nichols pleaded guilty to a federal felony drug offense. 511 U. S., at 740. Several years earlier, unrepresented by counsel, he had been convicted of driving under the influence (DUI), a state-law misdemeanor, and fined $250 but not imprisoned. *Ibid*. Nichols' DUI conviction, under the then-mandatory Sentencing Guidelines, effectively elevated by about two years the sentencing range for Nichols' federal drug offense. *Ibid*. We rejected Nichols' contention that, as his later sentence for the federal drug offense involved imprisonment, use of his uncounseled DUI conviction to elevate that sentence violated the Sixth Amendment. *Id.,* at 746–747. "[C]onsistent with the Sixth and Fourteenth Amendments of the Constitution," we held, "an uncounseled misdemeanor conviction, valid under *Scott* because

no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction." *Id.,* at 748–749.

## C

Respondent Bryant's conduct is illustrative of the domestic violence problem existing in Indian country. During the period relevant to this case, Bryant, an enrolled member of the Northern Cheyenne Tribe, lived on that Tribe's reservation in Montana. He has a record of over 100 tribal-court convictions, including several misdemeanor convictions for domestic assault. Specifically, between 1997 and 2007, Bryant pleaded guilty on at least five occasions in Northern Cheyenne Tribal Court to committing domestic abuse in violation of the Northern Cheyenne Tribal Code. On one occasion, Bryant hit his live-in girlfriend on the head with a beer bottle and attempted to strangle her. On another, Bryant beat a different girlfriend, kneeing her in the face, breaking her nose, and leaving her bruised and bloodied.

For most of Bryant's repeated brutal acts of domestic violence, the Tribal Court sentenced him to terms of imprisonment, never exceeding one year. When convicted of these offenses, Bryant was indigent and was not appointed counsel. Because of his short prison terms, Bryant acknowledges, the prior tribal-court proceedings complied with ICRA, and his convictions were therefore valid when entered. Bryant has never challenged his tribal-court convictions in federal court under ICRA's habeas corpus provision.

In 2011, Bryant was arrested yet again for assaulting women. In February of that year, Bryant attacked his then girlfriend, dragging her off the bed, pulling her hair, and repeatedly punching and kicking her. During an interview with law enforcement officers, Bryant admitted that he had physically assaulted this woman five or six

times. Three months later, he assaulted another woman with whom he was then living, waking her by yelling that he could not find his truck keys and then choking her until she almost lost consciousness. Bryant later stated that he had assaulted this victim on three separate occasions during the two months they dated.

Based on the 2011 assaults, a federal grand jury in Montana indicted Bryant on two counts of domestic assault by a habitual offender, in violation of §117(a). Bryant was represented in federal court by appointed counsel. Contending that the Sixth Amendment precluded use of his prior, uncounseled, tribal-court misdemeanor convictions to satisfy §117(a)'s predicate-offense element, Bryant moved to dismiss the indictment. The District Court denied the motion, App. to Pet. for Cert. 32a, and Bryant entered a conditional guilty plea, reserving the right to appeal that decision. Bryant was sentenced to concurrent terms of 46 months' imprisonment on each count, to be followed by three years of supervised release.

The Court of Appeals for the Ninth Circuit reversed the conviction and directed dismissal of the indictment. 769 F. 3d 671 (2014). Bryant's tribal-court convictions were not themselves constitutionally infirm, the Ninth Circuit comprehended, because "the Sixth Amendment right to appointed counsel does not apply in tribal court proceedings." *Id.,* at 675. But, the court continued, had the convictions been obtained in state or federal court, they would have violated the Sixth Amendment because Bryant had received sentences of imprisonment although he lacked the aid of appointed counsel. Adhering to its prior decision in *United States* v. *Ant*, 882 F. 2d 1389 (CA9 1989),[7]

———————
[7] In *United States* v. *Ant*, 882 F. 2d 1389 (1989), the Ninth Circuit proscribed the use of an uncounseled tribal-court guilty plea as evidence of guilt in a subsequent federal prosecution arising out of the same incident. Use of the plea was impermissible, the Court of Appeals reasoned, "because the tribal court guilty plea was made under circum-

the Court of Appeals held that, subject to narrow excep-
tions not relevant here, "tribal court convictions may be
used in subsequent [federal] prosecutions only if the tribal
court guarantees a right to counsel that is, at minimum,
coextensive with the Sixth Amendment right."  769 F. 3d,
at 677.  Rejecting the Government's argument that our
decision in *Nichols* required the opposite result, the Ninth
Circuit concluded that *Nichols* applies only when the prior
conviction *did* comport with the Sixth Amendment, *i.e.,*
when no sentence of imprisonment was imposed for the
prior conviction.  769 F. 3d, at 677–678.

Judge Watford concurred, agreeing that *Ant* controlled
the outcome of this case, but urging reexamination of *Ant*
in light of *Nichols.*  769 F. 3d, at 679.  This Court's deci-
sion in *Nichols*, Judge Watford wrote, "undermines the
notion that uncounseled convictions are, as a categorical
matter, too unreliable to be used as a basis for imposing a
prison sentence in a subsequent case."  769 F. 3d, at 679.
The Court of Appeals declined to rehear the case en banc
over vigorous dissents by Judges Owens and O'Scannlain.

In disallowing the use of an uncounseled tribal-court
conviction to establish a prior domestic violence conviction
within §117(a)'s compass, the Ninth Circuit created a
Circuit split.  The Eighth and Tenth Circuits have both
held that tribal-court "convictions, valid at their inception,
and not alleged to be otherwise unreliable, may be used to
prove the elements of §117."  *United States* v. *Cavanaugh*,
643 F. 3d 592, 594 (CA8 2011); see *United States* v. *Sha-
vanaux*, 647 F. 3d 993, 1000 (CA10 2011).  To resolve this
disagreement, we granted certiorari, 577 U. S. ___ (2016),
and now reverse.

_____

stances which would have violated the United States Constitution were
it applicable to tribal proceedings."  *Id.,* at 1390.

## II

Bryant's tribal-court convictions, he recognizes, infringed no constitutional right because the Sixth Amendment does not apply to tribal-court proceedings. Brief for Respondent 5. Those prior convictions complied with ICRA, he concedes, and therefore were valid when entered. But, had his convictions occurred in state or federal court, Bryant observes, *Argersinger* and *Scott* would have rendered them invalid because he was sentenced to incarceration without representation by court-appointed counsel. Essentially, Bryant urges us to treat tribal-court convictions, for §117(a) purposes, as though they had been entered by a federal or state court. We next explain why we decline to do so.

As earlier recounted, we held in *Nichols* that "an uncounseled misdemeanor conviction, valid under *Scott* because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction." 511 U. S., at 748–749. "Enhancement statutes," we reasoned, "do not change the penalty imposed for the earlier conviction"; rather, repeat-offender laws "penaliz[e] only the last offense committed by the defendant." *Id.*, at 747; see *United States* v. *Rodriquez*, 553 U. S. 377, 386 (2008) ("When a defendant is given a higher sentence under a recidivism statute . . . 100% of the punishment is for the offense of conviction. None is for the prior convictions or the defendant's 'status as a recidivist.'"). *Nichols* thus instructs that convictions valid when entered—that is, those that, when rendered, did not violate the Constitution—retain that status when invoked in a subsequent proceeding.

*Nichols*' reasoning steers the result here. Bryant's 46-month sentence for violating §117(a) punishes his most recent acts of domestic assault, not his prior crimes prosecuted in tribal court. Bryant was denied no right to counsel in tribal court, and his Sixth Amendment right was

honored in federal court, when he was "adjudicated guilty of the felony offense for which he was imprisoned." *Alabama* v. *Shelton*, 535 U. S. 654, 664 (2002). It would be "odd to say that a conviction untainted by a violation of the Sixth Amendment triggers a violation of that same amendment when it's used in a subsequent case where the defendant's right to appointed counsel is fully respected." 769 F. 3d, at 679 (Watford, J., concurring).[8]

Bryant acknowledges that had he been punished only by fines in his tribal-court proceedings, *Nichols* would have allowed reliance on his uncounseled convictions to satisfy §117(a)'s prior-crimes predicate. Brief for Respondent 50. We see no cause to distinguish for §117(a) purposes between valid but uncounseled convictions resulting in a fine and valid but uncounseled convictions resulting in imprisonment not exceeding one year. "Both Nichols's and Bryant's uncounseled convictions 'comport' with the Sixth Amendment, and for *the same reason*: the Sixth Amendment right to appointed counsel did not apply to either conviction." App. to Pet. for Cert. 50a (O'Scannlain, J., dissenting from denial of rehearing en banc).

In keeping with *Nichols*, we resist creating a "hybrid" category of tribal-court convictions, "good for the punishment actually imposed but not available for sentence

––––––––––

[8] True, as Bryant points out, we based our decision in *Nichols* v. *United States*, 511 U. S. 738, 747 (1994), in part on the "less exacting" nature of sentencing, compared with the heightened burden of proof required for determining guilt. But, in describing the rule we adopted, we said that it encompasses both "criminal history provisions," applicable at sentencing, and "recidivist statutes," of which §117(a) is one. *Ibid.* Moreover, *Nichols*' two primary rationales—the validity of the prior conviction and the sentence's punishment of "only the last offense"—do not rely on a distinction between guilt adjudication and sentencing. Indeed, it is the validity of the prior conviction that distinguishes *Nichols* from *United States* v. *Tucker*, 404 U. S. 443, 448 (1972), in which we found impermissible the use at sentencing of an *invalid*, uncounseled prior conviction.

enhancement in a later prosecution." 511 U. S., at 744. *Nichols* indicates that use of Bryant's uncounseled tribal-court convictions in his §117(a) prosecution did not "transform his prior, valid, tribal court convictions into new, invalid, federal ones." App. to Pet. for Cert. 50a (opinion of O'Scannlain, J.).

Our decision in *Burgett*, which prohibited the subsequent use of a conviction obtained in violation of the right to counsel, does not aid Bryant. Reliance on an invalid conviction, *Burgett* reasoned, would cause the accused to "suffe[r] anew from the deprivation of [his] Sixth Amendment right." 389 U. S., at 115. Because a defendant convicted in tribal court suffers no Sixth Amendment violation in the first instance, "[u]se of tribal convictions in a subsequent prosecution cannot violate [the Sixth Amendment] 'anew.'" *Shavanaux*, 647 F. 3d, at 998.

Bryant observes that reliability concerns underlie our right-to-counsel decisions and urges that those concerns remain even if the Sixth Amendment itself does not shelter him. *Scott* and *Nichols*, however, counter the argument that uncounseled misdemeanor convictions are categorically unreliable, either in their own right or for use in a subsequent proceeding. Bryant's recognition that a tribal-court conviction resulting in a fine would qualify as a §117(a) predicate offense, we further note, diminishes the force of his reliability-based argument. There is no reason to suppose that tribal-court proceedings are less reliable when a sentence of a year's imprisonment is imposed than when the punishment is merely a fine. No evidentiary or procedural variation turns on the sanction—fine only or a year in prison—ultimately imposed.

Bryant also invokes the Due Process Clause of the Fifth Amendment in support of his assertion that tribal-court judgments should not be used as predicate offenses. But, as earlier observed, ICRA itself requires tribes to ensure "due process of law," §1302(a)(8), and it accords defend-

ants specific procedural safeguards resembling those contained in the Bill of Rights and the Fourteenth Amendment. See *supra,* at 8. Further, ICRA makes habeas review in federal court available to persons incarcerated pursuant to a tribal-court judgment. §1303. By that means, a prisoner may challenge the fundamental fairness of the proceedings in tribal court. Proceedings in compliance with ICRA, Congress determined, and we agree, sufficiently ensure the reliability of tribal-court convictions. Therefore, the use of those convictions in a federal prosecution does not violate a defendant's right to due process. See *Shavanaux*, 647 F. 3d, at 1000; cf. *State* v. *Spotted Eagle*, 316 Mont. 370, 378–379, 71 P. 3d 1239, 1245–1246 (2003) (principles of comity support recognizing uncounseled tribal-court convictions that complied with ICRA).

\*    \*    \*

Because Bryant's tribal-court convictions occurred in proceedings that complied with ICRA and were therefore valid when entered, use of those convictions as predicate offenses in a §117(a) prosecution does not violate the Constitution. We accordingly reverse the judgment of the Court of Appeals for the Ninth Circuit and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

―――――――――

No. 15–420

―――――――――

## UNITED STATES, PETITIONER *v.*
## MICHAEL BRYANT, JR.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 13, 2016]

JUSTICE THOMAS, concurring.

The Court holds that neither the Sixth Amendment nor the Fifth Amendment's Due Process Clause prohibits the Government from using Michael Bryant's uncounseled tribal-court convictions as predicates for the federal crime of committing a domestic assault within Indian country. *Ante*, at 15–16; see 18 U. S. C. §117(a) (making it a federal crime to "commi[t] a domestic assault within . . . Indian country" if the person "has a final conviction on at least 2 separate prior occasions in . . . Indian tribal court proceedings" for domestic assault and similar crimes). Because our precedents dictate that holding, I join the Court's opinion.

The fact that this case arose at all, however, illustrates how far afield our Sixth Amendment and Indian-law precedents have gone. Three basic assumptions underlie this case: that the Sixth Amendment ordinarily bars the Government from introducing, in a later proceeding, convictions obtained in violation of the right to counsel, *ante,* at 8–9; that tribes' retained sovereignty entitles them to prosecute tribal members in proceedings that are not subject to the Constitution, *ante,* at 7–8; and that Congress can punish assaults that tribal members commit against each other on Indian land, *ante,* at 5–7. Although our precedents have endorsed these assumptions for dec-

ades, the Court has never identified a sound constitutional basis for any of them, and I see none.

Start with the notion that the Sixth Amendment generally prohibits the government from using a prior, uncounseled conviction obtained in violation of the right to counsel as a predicate for a new offense in a new proceeding. *Ante*, at 8–9. All that the text of the Sixth Amendment requires in a criminal prosecution is that the accused enjoy the "[a]ssistance of [c]ounsel" in *that* proceeding. The Court was likely wrong in *Burgett* v. *Texas,* 389 U. S. 109 (1967), when it created a Sixth Amendment "exclusionary rule" that prohibits the government from using prior convictions obtained in violation of the right to counsel in subsequent proceedings to avoid "erod[ing] the principle" of the right to counsel. *Id.,* at 115. I would be open to reconsidering *Burgett* in a future case.

The remaining two assumptions underpinning this case exemplify a central tension within our Indian-law jurisprudence. On the one hand, the only reason why tribal courts had the power to convict Bryant in proceedings where he had no right to counsel is that such prosecutions are a function of a tribe's core sovereignty. See *United States* v. *Lara*, 541 U. S. 193, 197 (2004); *United States* v. *Wheeler*, 435 U. S. 313, 318, 322–323 (1978). By virtue of tribes' status as "'separate sovereigns pre-existing the Constitution,'" tribal prosecutions need not, under our precedents, comply with "'those constitutional provisions framed specifically as limitations on federal or state authority.'" *Ante,* at 7–8 (quoting *Santa Clara Pueblo* v. *Martinez*, 436 U. S. 49, 56 (1978)).

On the other hand, the validity of Bryant's ensuing federal conviction rests upon a contrary view of tribal sovereignty. Congress ordinarily lacks authority to enact a general federal criminal law proscribing domestic abuse. See *United States* v. *Morrison*, 529 U. S. 598, 610–613 (2000). But, the Court suggests, Congress must intervene

on reservations to ensure that prolific domestic abusers receive sufficient punishment. See *ante*, at 4–5. The Court does not explain where Congress' power to act comes from, but our precedents leave no doubt on this score. Congress could make Bryant's domestic assaults a federal crime subject to federal prosecution only because our precedents have endowed Congress with an "all-encompassing" power over all aspects of tribal sovereignty. *Wheeler, supra*, at 319. Thus, even though tribal prosecutions of tribal members are purportedly the apex of tribal sovereignty, Congress can second-guess how tribes prosecute domestic abuse perpetrated by Indians against other Indians on Indian land by virtue of its "plenary power" over Indian tribes. See *United States* v. *Kagama*, 118 U. S. 375, 382–384 (1886); accord, *Lara,* 541 U. S., at 200.

I continue to doubt whether either view of tribal sovereignty is correct. See *id.,* at 215 (THOMAS, J., concurring in judgment). Indian tribes have varied origins, discrete treaties with the United States, and different patterns of assimilation and conquest. In light of the tribes' distinct histories, it strains credulity to assume that all tribes necessarily retained the sovereign prerogative of prosecuting their own members. And by treating all tribes as possessing an identical quantum of sovereignty, the Court's precedents have made it all but impossible to understand the ultimate source of each tribe's sovereignty and whether it endures. See Prakash, Against Tribal Fungibility, 89 Cornell L. Rev. 1069, 1070–1074, 1107–1110 (2004).

Congress' purported plenary power over Indian tribes rests on even shakier foundations. No enumerated power—not Congress' power to "regulate Commerce . . . with Indian Tribes," not the Senate's role in approving treaties, nor anything else—gives Congress such sweeping authority. See *Lara, supra*, at 224–225 (THOMAS, J., concurring in judgment); *Adoptive Couple* v. *Baby Girl*, 570 U. S. \_\_\_, \_\_\_–\_\_\_ (2013) (THOMAS, J., concurring) (slip op., at 3–5).

Indeed, the Court created this new power because it was unable to find an enumerated power justifying the federal Major Crimes Act, which for the first time punished crimes committed by Indians against Indians on Indian land. See *Kagama*, *supra*, at 377–380; cf. *ante,* at 5. The Court asserted: "The power of the General Government over these remnants of a race once powerful, now weak and diminished in numbers, is necessary to their protection . . . . It must exist in that government, because it has never existed anywhere else." *Kagama, supra*, at 384. Over a century later, *Kagama* endures as the foundation of this doctrine, and the Court has searched in vain for any valid constitutional justification for this unfettered power. See, *e.g., Lone Wolf* v. *Hitchcock*, 187 U. S. 553, 566–567 (1903) (relying on *Kagama's* race-based plenary power theory); *Winton* v. *Amos*, 255 U. S. 373, 391–392 (1921) (Congress' "plenary authority" is based on Indians' "condition of tutelage or dependency"); *Wheeler*, *supra,* at 319 (*Winton* and *Lone Wolf* illustrate the "undisputed fact that Congress has plenary authority" over tribes); *Lara, supra,* at 224 (THOMAS, J., concurring in judgment) ("The Court utterly fails to find any provision of the Constitution that gives Congress enumerated power to alter tribal sovereignty").

It is time that the Court reconsider these precedents. Until the Court ceases treating all Indian tribes as an undifferentiated mass, our case law will remain bedeviled by amorphous and ahistorical assumptions about the scope of tribal sovereignty. And, until the Court rejects the fiction that Congress possesses plenary power over Indian affairs, our precedents will continue to be based on the paternalistic theory that Congress must assume all-encompassing control over the "remnants of a race" for its own good. *Kagama, supra,* at 384.