# SUPREME COURT OF THE UNITED STATES

UPSTATE CITIZENS FOR EQUALITY, INC., ET AL.

16–1320                  *v.*

UNITED STATES, ET AL.


TOWN OF VERNON, NEW YORK

17–8                  *v.*

UNITED STATES, ET AL.

ON PETITIONS FOR WRITS OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Nos. 16–1320 and 17–8.   Decided November 27, 2017

The petitions for writs of certiorari are denied.

JUSTICE THOMAS, dissenting from the denials of certiorari.

The Indian Reorganization Act (IRA), 48 Stat. 985, as amended, permits the Secretary of the Interior to take land into trust for individual Indians or Indian tribes. 25 U. S. C. §5108.  Once land is taken into trust under the IRA, it is exempt from almost all state control.  It is no longer subject to state or local taxation.  *Ibid.*  Local zoning and regulatory requirements do not apply.  25 CFR §1.4(a) (2017).  And unless the Indian tribe consents, the State may not exercise criminal or civil jurisdiction.  25 U. S. C. §§1321(a)(1), 1322(a).  The IRA thus allows the Secretary to take state land and strip the State of almost all sovereign power over it.

In 2008, the Secretary invoked the IRA to take into trust more than 13,000 acres of land in upstate New York for the Oneida Nation of New York, an Indian Tribe that descended from one of the Iroquois nations.  841 F. 3d 556, 564 (CA2 2016).  Petitioners, a local government and several interested citizens from upstate New York, ask us to decide whether this use of the IRA is a constitutional

exercise of Congress' power under the Indian Commerce
Clause "[t]o regulate Commerce . . . with the Indian
Tribes," Art. I, §8, cl. 3.  I would grant the petitions for
writs of certiorari to reconsider our Indian Commerce
Clause precedents.

Those precedents have acquiesced in Congress' assertion
of a "plenary power to legislate in the field of Indian af-
fairs."  *Cotton Petroleum Corp.* v. *New Mexico*, 490 U. S.
163, 192 (1989).  But "neither the text nor the original
understanding of the [Indian Commerce] Clause supports
Congress' claim to such 'plenary' power."  *Adoptive Couple*
v. *Baby Girl*, 570 U. S. 637, ___ (2013) (THOMAS, J., con-
curring) (slip op., at 4); see *United States* v. *Lara*, 541
U. S. 193, 224 (2004) (THOMAS, J., concurring in judg-
ment); *Puerto Rico* v. *Sanchez Valle*, 579 U. S. ___, ___
(2016) (THOMAS, J., concurring in part and concurring in
judgment) (slip op., at 1); *United States* v. *Bryant*, 579
U. S. ___, ___–___ (2016) (THOMAS, J., concurring) (slip op.,
at 3–4).  Instead, as I have previously explained, the
Clause extends only to "regulat[ing] trade with Indian
tribes—that is, Indians who had not been incorporated
into the body-politic of any State."  *Adoptive Couple*, *su-
pra,* at ___ (slip op., at 5).

Understood this way, the Indian Commerce Clause does
not appear to give Congress the power to authorize the
taking of land into trust under the IRA.  Even assuming
that land transactions are "Commerce" within the scope of
the Clause, but see Natelson, The Original Understanding
of the Indian Commerce Clause, 85 Denver U. L. Rev. 201,
214–215, and n. 94 (2007), many applications of the IRA
do not involve trade of any kind.  The IRA permits the
Secretary to take into trust land that an Indian tribe
*already owns*.  See 25 U. S. C. §5108 (authorizing the
Secretary to take into trust land acquired through "relin-
quishment," "gift," or "assignment"); 25 CFR §151.3
(providing that the Secretary may take land into trust

"[w]hen the tribe already owns an interest in the land");
§151.4 (providing that the Secretary may take into trust
"[u]nrestricted land owned by an individual Indian or a
tribe"). And in cases like these, where the tribe already
owns the land, neither money nor property changes hands.
Instead, title is slightly modified by adding "the United
States in trust for" in front of the name of "the Indian
tribe or individual Indian" who owns the land. See 25
U. S. C. §5108. This arrangement does not affect the
Indian tribe's beneficial ownership of the property, and it
does not afford the United States any meaningful property
rights. See F. Cohen, Handbook of Federal Indian Law
997–998, 1057–1058 (2012); Prakash, Against Tribal
Fungibility, 89 Cornell L. Rev. 1069, 1093–1094, and n.
152 (2004). In short, because no exchange takes place,
these trust arrangements do not resemble "'trade with
Indians.'" *Adoptive Couple, supra*, at \_\_\_ (THOMAS, J.,
concurring) (slip op., at 4) (quoting Natelson, *supra*, at
215–216).

Applying our precedents, the Second Circuit concluded
that the Indian Commerce Clause empowered the Federal
Government to take into trust the land at issue here. In
so doing, it showed how far our precedents interpreting
the Indian Commerce Clause have strayed from the origi-
nal understanding, and how much Congress' power has
grown as a result. Asserting plenary power, Congress
authorized the Secretary to take 13,000 acres of New York
and to declare it sovereign Oneida territory. It did so even
though the land had been under New York's sovereign
control for more than two centuries. *City of Sherrill* v.
*Oneida Indian Nation of N. Y.*, 544 U. S. 197, 203, 221
(2005). And it did so even though restoring tribal sover-
eignty over the land would "'seriously burde[n] the admin-
istration of state and local governments' and would ad-
versely affect landowners neighboring the tribal patches."
*Id.*, at 220 (quoting *Hagen* v. *Utah*, 510 U. S. 399, 421

(1994)); see also 841 F. 3d, at 564.

Under our precedents, Congress has thus obtained the power to take any state land and strip the State of almost all sovereign power over it "for the purpose of providing land for Indians." 25 U. S. C. §5108. This means Congress could reduce a State to near nonexistence by taking all land within its borders and declaring it sovereign Indian territory. It is highly implausible that the Founders understood the Indian Commerce Clause, which was virtually unopposed at the founding, as giving Congress the power to destroy the States' territorial integrity. See *Adoptive Couple*, 570 U. S., at ___ (THOMAS, J., concurring) (slip op., at 9). Indeed, they would have been shocked to find such a power lurking in a Clause they understood to give Congress the limited authority "to regulate trade with Indian tribes living beyond state borders." *Ibid.*

When our precedents permit such an absurd result, something has gone seriously awry. It is time to fix our error. We should have granted certiorari to reexamine our Indian Commerce Clause precedents, instead of standing idly by as Congress, the Executive, and the lower courts stray further and further from the Constitution. I respectfully dissent from the denials of certiorari.