[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 16-11741

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RICARDO AMADOR BALLESTEROS-GARCIA,
a.k.a. Ricardo Amador Ballesteros,
a.k.a. Ricardo Amador Ballester
a.k.a. Alejandro Alvarez Abreu,

Defendant-Appellant.

_____

2                    Opinion of the Court                16-11741

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:13-cr-20455-PAS-1

_____

_____

No. 16-11770

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RICARDO AMADOR BALLESTEROS-GARCIA,
a.k.a. Ricardo Amador Ballesteros,
a.k.a. Ricardo Amador Ballester,
a.k.a. Alejandro Alvarez Abreu,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:12-cr-20322-PAS-1

16-11741                 Opinion of the Court                 3

_____

_____

No. 16-11771

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RICARDO AMADOR BALLESTEROS-GARCIA,
a.k.a. Ricardo Amador Ballesteros,
a.k.a. Ricardo Amador Ballerter
a.k.a. Alejandro Alvarez Abreu,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:12-cr-20400-PAS-1

_____

Before JORDAN, BRANCH, and MARCUS, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Ricardo Ballesteros-Garcia, proceeding through counsel after proceeding *pro se* in the district court, appeals his convictions and sentence. This case began as three separate indictments that were consolidated for trial and sentencing, and involved a variety of charges, including serving as a pilot without an airman's certificate, conspiring to commit bank fraud, committing bank fraud, and making false statements to financial institutions. Ballesteros-Garcia told the district court he wanted to represent himself, and after the court conducted hearings pursuant to *Faretta v. California*, 422 U.S. 806 (1975), to confirm that his waiver of the right to counsel was knowing and voluntary, it allowed him to do so from arraignment through sentencing, with the help of standby counsel. The jury found Ballesteros-Garcia guilty of the false statement charges and acquitted him of the other charges. The district court sentenced him to 87 months' imprisonment and five years' supervised release and ordered him to pay restitution in the amounts of $243,164 and $332,042.

On appeal, Ballesteros-Garcia argues that: (1) the district court violated his Sixth Amendment rights by denying him the ability to subpoena witnesses for trial, sentencing, and the restitution hearing, and refusing to appoint him an investigator or allow him access to a private investigator; (2) the court erred in calculating the loss and restitution amounts; and (3) the court erred in applying a 2-level role enhancement pursuant to U.S.S.G. § 3B1.1(c). After thorough review, we affirm.

## I.

We review constitutional questions *de novo*. *United States v. Ward*, 486 F.3d 1212, 1221 (11th Cir. 2007). We review a district court's evidentiary rulings for abuse of discretion and review factual findings underlying an evidentiary ruling for clear error. *United States v. Lanzon*, 639 F.3d 1293, 1300 (11th Cir. 2011). Similarly, we review a district court's determination of the restitution amount for abuse of discretion and review factual findings underlying the restitution order for clear error. *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007). We review a district court's determination of loss amount for clear error. *United States v. Cavallo*, 790 F.3d 1202, 1232 (11th Cir. 2015). We also review the imposition of an aggravating role enhancement for clear error. *United States v. Jimenez*, 224 F.3d 1243, 1251 (11th Cir. 2000). A factual finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been committed. *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004).

However, if a defendant fails to object to an issue in the district court, we review only for plain error and will not reverse unless he shows (1) plain (2) error (3) affecting his substantial rights. *Ward*, 486 F.3d at 1221. If all three conditions are met, we may exercise our discretion to notice an error that seriously affects the fairness, integrity, or reputation of judicial proceedings. *Id.* In addition, a party may not challenge an error he invited. *United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006). Finally, we deem an issue abandoned if it is not prominently raised on appeal in the

initial brief or if it is raised without supporting arguments and authorities, but we can consider the issue *sua sponte* if a forfeiture exception applies and extraordinary circumstances warrant review. *United States v. Smith*, 967 F.3d 1196, 1204 n.5 (11th Cir. 2020); *United States v. Thomas*, 242 F.3d 1028, 1033 (11th Cir. 2001); *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir.) (*en banc*), *cert. denied*, 143 S. Ct. 95 (2022).

## II.

First, we are unpersuaded by Ballesteros-Garcia's claim that the district court violated his Sixth Amendment rights.  The Sixth Amendment guarantees a defendant the effective assistance of counsel for his defense. *United States v. Bryant*, 579 U.S. 140, 149 (2016).  However, the Supreme Court has declined to decide what showing a defendant must make to be entitled to the appointment of an investigator. *Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985).

The Sixth Amendment also guarantees a defendant the right to compulsory process to obtain witnesses in his favor at trial and to present favorable evidence. *United States v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004).  In evaluating alleged violations of this right, we examine whether the right was actually violated and, if so, ask whether the error was harmless beyond a reasonable doubt. *Id.* at 1362–63.  Under Federal Rule of Criminal Procedure 17(b), a court must order the issuance of a subpoena for a named witness, on a defendant's *ex parte* motion, if the defendant shows (1) his inability to pay the witness's fees, and (2) "the necessity of the

witness's presence for an adequate defense." A defendant's right to compulsory process is not violated if he never asks the court to issue a subpoena. *United States v. Capers*, 708 F.3d 1286, 1304 (11th Cir. 2013). Further, a defendant does not have a due process right to call witnesses at sentencing; he must be afforded an opportunity to refute the information brought against him, but courts have discretion to determine the kinds of information they will consider. *United States v. Giltner*, 889 F.2d 1004, 1008 (11th Cir. 1989).

Here, Ballesteros-Garcia first argues that the district court should have appointed him an investigator. Notably, however, he did not request an investigator from the court nor did he object to the court's decision to appoint him Spanish-speaking standby counsel rather than an investigator. Thus, we review this claim for plain error, and can find none. For starters, we've found no case from this Court or the Supreme Court requiring the appointment of an investigator *sua sponte*, or even upon a motion. *Cf. Caldwell*, 472 U.S. at 323 n.1. Nor can Ballesteros-Garcia show that his substantial rights were affected; he eventually hired a private investigator on his own and retained her during sentencing. Thus, to the extent that he faults the court for failing to appoint him an investigator at any point *after* he hired an investigator, he invited any error by representing that he already had one. *See Love*, 449 F.3d at 1157. And to the extent his compulsory process argument stems from the court's failure to appoint an investigator, that argument fails for the reasons we've just detailed.

We also conclude that the district court's actions were sufficient to protect Ballesteros-Garcia's compulsory process rights to obtain witnesses in his favor before and during his trial, even if he ultimately failed to secure any witnesses. As the record reflects, Ballesteros-Garcia, who chose to proceed *pro se*, said at a pretrial conference that he would bring all his witnesses except for the "mandatory witnesses" on the government's side at his own expense. Thus, he invited any error as to all the non-government witnesses, including those he says he wished to call, like Rafael Del Pino and Rafael Cardenas. *See id.*

We find no error concerning the other potential witnesses either. As for Cardenas and another witness he mentions to us, Agent Rafael Quinquilla, Ballesteros-Garcia never placed either name on his witness list, nor did he file an amended witness list after the court instructed him to do so. The court even told him he could call Cardenas as a witness if he gave the court Cardenas's address. It also observed that he had not requested subpoenas and that, normally, defendants prepared subpoenas and provided them to the court to issue. His standby counsel offered to prepare them, and the court granted him a four-week continuance. And when the court later denied Ballesteros-Garcia another continuance, he had not indicated that he needed the continuance to prepare subpoenas. On this record, not only were Ballesteros-Garcia's actions likely insufficient to preserve the witness issue for appeal, but they also do not show that the court failed to protect his right to compulsory process to obtain witnesses in his favor at trial.

Nor do we conclude that the district court denied Ballesteros-Garcia compulsory process at sentencing. As for whether the district court erred by denying his motion to order the Bureau of Prisons to permit his investigator and others to visit him in prison, his motion did not explain why he needed to see those individuals in prison and he has not provided any supporting authorities for his request, either in district court or on appeal. As for whether the district court violated Ballesteros-Garcia's compulsory process rights by denying his Rule 17(b) subpoenas, we've located no binding precedent holding that he had a due process right to call witnesses at sentencing. *See Giltner*, 889 F.2d at 1008. Moreover, he did not re-raise his motions for Rule 17(b) subpoenas before the restitution hearing, and there is no authority to suggest that the court erred or plainly erred by not *sua sponte* re-raising and granting those motions. We affirm as to his Sixth Amendment claims. [1]

### III.

---

[1] Further, Ballesteros-Garcia has abandoned (1) any argument that the district court violated his compulsory process rights by declining to subpoena the jurors in his case, Rafael Cardenas, or Agent Rafael Quinquilla, and (2) any challenge separate from his compulsory process argument to the district court's denial of his motions to continue or for Fed. R. Crim. P. 17(b) subpoenas or to any of the court's specific evidentiary rulings. These issues are abandoned because his brief on appeal does not provide supporting arguments and authorities for them. *See Smith*, 967 F.3d at 1204 n.5. He also raises two arguments in his reply brief for the first time on appeal -- concerning the government's concealment of evidence and his detention -- and those arguments are likewise abandoned. *See Thomas*, 242 F.3d at 1033.

Next, we find no merit to Ballesteros-Garcia's claim that the court erred in calculating the loss amount at sentencing. A defendant is subject to a 14-level enhancement if his offense results in a loss amount of more than $550,000 and less than $1,500,000. U.S.S.G. § 2B1.1(b)(1)(H). The court must make a reasonable estimate of the loss. *Id.* comment. (n.3(C)).

Loss must not include interest of any kind and must be reduced by the money returned by the defendant. *Id.* (n.3(D)(i), (E)(i)). Where a loss arises out of a fraudulent mortgage transaction, the actual loss is the amount of the loan minus the amount recovered from the collateral property's sale. *Cavallo*, 790 F.3d at 1239. We've not addressed whether a principal amount increased by outstanding interest pursuant to the terms of the loan can be used to calculate loss.

Ballesteros-Garcia first challenges the district court's loss calculation for the 158th Street property, claiming that the district court should not have used a principal amount for the property that was increased by unpaid interest. But he did not make this specific argument in district court. And because a defendant does not preserve *all* possible challenges to a court's loss calculation by raising *any* challenge to that calculation, we review this claim for plain error and, once again, can find none. *See United States v. Abovyan*, 988 F.3d 1288, 1312 (11th Cir. 2021) (holding that defendant waived challenge to intended loss amount and its foreseeability because he solely objected to the use of intended loss rather than actual loss). Although § 2B1.1 broadly prohibits courts from including interest

"of any kind" in loss, the unpaid interest here was made part of the principal pursuant to the terms of the loan.[2] We've located no decision from this Court or the Supreme Court addressing whether a court can use a principal amount increased by unpaid interest pursuant to the terms of the loan to calculate loss. Thus, the district court did not plainly err in its loss calculation for the 158th Street property. *See Ward*, 486 F.3d at 1221.

As for the Ixora Way property, the court did not clearly err by concluding that the principal amount increased to $869,119 -- after starting as a $805,000 loan -- because the government provided evidence that this was the principal amount due at the time that Ballesteros-Garcia entered into a loan modification agreement with JP Morgan Chase & Co. ("Chase"). Further, he does not indicate on appeal that the court included interest in the loss calculation. *See Smith*, 967 F.3d at 1204 n.5. The court's ultimate calculation as to the Ixora Way property was based on the final outstanding principal at the time the loan was defaulted on, $612,043, minus the gross proceeds from the property's sale, $530,000, plus the $250,000 Chase never recovered from the modification agreement -- resulting in a loss amount of $332,043. Ballesteros-Garcia has abandoned any challenge to the inclusion of the $250,000 from the modification

---

[2] The loan was described as containing a "negative amortization" feature, which is defined as "[a]n increase in a loan's principal balance caused by monthly payments insufficient to pay accruing interest." *Black's Law Dictionary* (11th ed. 2019) (defining "negative amortization").

agreement, *see id.*, and regardless, we cannot say that the district court clearly erred by including this sum in the loss amount.

Finally, the court did not clearly err by declining to reduce the loss amount stemming from either property by the payments that he made. As the record reflects, the government provided evidence that those payments went to "interest only" rather than principal. Further, to the extent that any of the payments were made towards the principal balances on the loans, they were incorporated into the loss calculation through those principal balances. And, as we've noted, the guideline provides that the loss calculation should not include any interest. *See* § 2B1.1(b)(1) comment. (n.3(D)(i), (E)(i)).[3]

## IV.

Nor are we convinced that the district court miscalculated the restitution amount at sentencing. To calculate the restitution amount owed to a successor lender who purchased a fraudulently procured mortgage, a court generally should subtract the amount recovered from the sale of the property from the amount that the

---

[3] The government concedes that the court made a calculation error and that the loss amount stemming from the 158th Street property was $50 lower. But because the 14-level enhancement applied to Ballesteros-Garcia if the loss amount was greater than $550,000, and the court found that the total loss amount for both properties was $599,833.76, any calculation error less than $49,833.76 was harmless. *See* § 2B1.1(b)(1)(H).

lender paid to acquire the mortgage. *United States v. Martin*, 803 F.3d 581, 595–96 (11th Cir. 2015).

Here, the district court did not abuse its discretion in calculating the restitution amount or clearly err in any of its related factual findings. To the extent the Ballesteros-Garcia challenges the language concerning restitution in the district court's order in case number 1:12-cr-20400 (the case involving the 158th Street property), the court entered an amended judgment in that case reflecting the actual amount it found that he owed in restitution. In determining this amount, the court properly relied on the price that the successor lender paid for the 158th Street property mortgage rather than original amount of the loan. *See id.*

As for the Ixora Way property, Ballesteros-Garcia abandoned any challenge to the court's restitution determination. Although he says in passing that the calculation should have been based on the principal due on the loan at the time of the loan modification agreement, he does not provide any supporting arguments or authorities. *See Smith*, 967 F.3d at 1204 n.5. He also abandoned any argument that the amounts that the successor lenders paid for the mortgages were incorrect, or that the court incorrectly identified the victims. *See id.*

## V.

Finally, we are unpersuaded by Ballesteros-Garcia's argument that the district court erred in applying a role enhancement at sentencing. A defendant is subject to a 2-level enhancement if

he was an organizer, leader, manager, or supervisor in any criminal activity involving at least one other participant. U.S.S.G. § 3B1.1(c), comment. (n.2). In *United States v. Mandhai*, we held that the assertion of control or influence over one person is sufficient to support a § 3B1.1(c) enhancement. 375 F.3d 1243, 1248 (11th Cir. 2004).

Once again, Ballesteros-Garcia has abandoned any challenge to the district court's imposition of the § 3B1.1(c) enhancement by failing to provide supporting arguments and authorities in his brief on appeal. *See Smith*, 967 F.3d at 1204 n.5. He says that the evidence was insufficient to support the enhancement, but he does not explain how. Furthermore, he distinguishes a case that the district court relied on, *Mandhai*, by asserting that he was not convicted of a conspiracy offense, but he does not explain why that is material to his enhancement. Regardless, even if he had not abandoned or failed to preserve this issue, the court did not clearly err in imposing the enhancement because he created a false name for his codefendant, Ivan Pita Gonzalez, obtained a passport and birth certificate under that false name, and paid deposits and mortgage payments related to properties he provided to Gonzalez under that false name -- all of which is sufficient to support the role enhancement. *See* U.S.S.G. § 3B1.1(c).

**AFFIRMED.**