# Illinois Official Reports

## Appellate Court

---

### *People v. Smith*, 2017 IL App (1st) 122370-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMAL SMITH, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-12-2370 |
| Filed | February 27, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-18811; the Hon. Diane Cannon, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Pamela Rubeo, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and John E. Nowak, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Simon and Pierce concurred in the judgment and opinion. |

**OPINION**

¶ 1     Defendant, Jamal Smith, appeals his convictions for unlawful use of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2008)) and aggravated unlawful use of a weapon by a felon (AUUW) (720 ILCS 5/24-1.6 (West 2008)) and his sentence of five years' imprisonment. On appeal, Smith contends (1) the trial court improperly limited defense counsel's cross-examination of Officer Moore; (2) the supreme court's decision in *People v. Aguilar*, 2013 IL 112116, rendered the predicate felony used to prove an element of his offense unconstitutional and void, therefore, his convictions for UUWF and AUUW should be vacated; and (3) if his UUWF conviction is affirmed, this court should reduce his conviction from a Class 2 felony to a Class 3 felony. On March 25, 2014, this court issued a judgment vacating both convictions. On September 28, 2016, our supreme court, in the exercise of its supervisory authority, directed this court to vacate the March 25, 2014, judgment and reconsider in light of *People v. McFadden*, 2016 IL 117424, and *People v. Burns*, 2015 IL 117387. The parties submitted supplemental briefs on the issue. Upon reconsideration, we vacate Smith's conviction of AUUW but affirm his conviction of UUWF.

¶ 2                                    JURISDICTION

¶ 3     The trial court sentenced Smith on July 25, 2012. He filed a notice of appeal on the same date. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. Dec. 11, 2014) governing appeals from a final judgment of conviction in a criminal case entered below.

¶ 4                                    BACKGROUND

¶ 5     Smith was charged, as a previously convicted felon, with one count of UUWF for being in possession of a semiautomatic handgun and one count of AUUW by a felon for possession of a revolver. The following evidence was elicited at Smith's jury trial. On October 3, 2009, at around 9:40 p.m., Chicago police tactical officer Ronald Moore, dressed in plain clothes, rode in the front passenger seat of an unmarked police car driven by Officer LeMyles Remias. Sergeant Richard Rochowicz was in the backseat of the car. In the area of 8800 South Halsted Street, Officer Moore observed that the female driver in the vehicle to the right of him was not wearing a seatbelt. They activated the police car's lights and pulled the car over. Officer Remias approached the driver, later identified as Natasha Kennedy. Officer Moore and Sergeant Rochowicz approached the passenger side of the car. As they approached, they observed the front seat passenger, defendant Smith, "leaning over as if he appeared to be placing something under his seat." Officer Moore also observed a male passenger, later identified as Christopher Smith, in the backseat.

¶ 6     The officers learned that Kennedy's license had been revoked and placed her under arrest. The occupants exited the vehicle, and Sergeant Rochowicz searched the vehicle before it was towed. While searching, Sergeant Rochowicz found a gun and announced "143 Adam" to alert the other officers. When he looked in the backseat, Sergeant Rochowicz found a second gun and announced "times two." After being advised of his *Miranda* rights, Sergeant Rochowicz asked Smith, "[W]hat's up with the gun?" Smith acknowledged owning the guns and stated

that he was taking the weapons to his "aunt's house because we're going out of town." Officer Moore testified that he observed suitcases in the backseat of the car.

¶ 7 On cross-examination, Officer Moore stated that when he checked the ownership of the vehicle, he found that it did not belong to Smith. His towing report did not account for the luggage, and he could not recall what had happened to the luggage. Officer Moore also acknowledged that the "143 Adam" code was not noted in any case or police reports, but it was a term officers often used. He stated that he did not see any weapons as he initially approached the car or at any time before Sergeant Rochowicz recovered the weapons. Officer Moore stated that neither he nor the other officers wrote down Smith's statement that the guns belonged to him. Also, an assistant State's Attorney did not come to interview Smith, and his statement was not videotaped.

¶ 8 Defense counsel then attempted to question Officer Moore about a five page incident report he filed:

> "Q. And, officer, this is a five-page report, correct?
>
> A. Yes.
>
> Q. And this report—there is an area where you have to identify suspects, correct?
>
> A. Yes.
>
> Q. Those who are victims, right?
>
> A. Yes.
>
> Q. What kind of case this is?
>
> A. Yes.
>
> Q. And it would list all of the suspects, right?
>
> A. Yes.
>
> Q. And there's all kinds of information that you have to put in here about the vehicle?
>
> THE COURT: Ladies and gentlemen, police reports are not evidence. You won't be getting police reports, not just in this case, but in any case just so you understand that. If they were, we would just give you the police report and send you back there. They are not evidence.
>
> MS. PANOZZO [Defense attorney]: Correct?
>
> A. Yes.
>
> Q. And there's a section here where you can prepare a narrative, which is a summary of what occurred, right?
>
> A. Yes.
>
> Q. And you prepared that summary?
>
> A. Yes.
>
> Q. All right. In that summary it talks about this—
>
> THE COURT: That will be sustained. Anything in the police report is not evidence. It is not admissible, ladies and gentlemen. Counsel knows that and now you know it too."

¶ 9 On redirect, Officer Moore stated that the other occupants of the vehicle, Christopher Smith and Natasha Kennedy, were found in possession of cannabis and they were brought to the police station on that basis.

¶ 10 Sergeant Rochowicz testified that on October 3, 2009, he worked as a tactical supervisor for a team of officers focused on gang and narcotics enforcement. That night, he, Officer Moore, and Officer Remias wore plain clothes and traveled in an unmarked police car. In the vicinity of 88th Street and Halsted Street, they observed a female driver not wearing a seat belt. They activated the police car's lights and pulled the car over. As Sergeant Rochowicz approached the stopped vehicle, he noticed the person sitting in the front passenger seat (which he identified as Smith) "crouching down reaching towards the floor area of the vehicle."

¶ 11 After the occupants exited the vehicle, Sergeant Rochowicz looked under the front passenger seat and found a "semiautomatic silver .32 caliber" handgun. The gun contained one live round in its chamber. Sergeant Rochowicz continued his search and found a second gun, a .38-caliber revolver containing five live rounds, behind the driver's side backseat. He read Smith his *Miranda* rights, and after Smith agreed to speak, he asked him, "[W]hat's up with the gun?" Smith told him that the gun was his and there was another gun in the rear compartment of the car. He stated that he was dropping the guns off at his aunt's house because he was going out of town. Sergeant Rochowicz observed luggage in the backseat of the car. At the police station, he gave the recovered weapons and ammunition to Officer Paublo Delgado for inventory.

¶ 12 On cross-examination, Sergeant Rochowicz stated that as he approached the stopped vehicle, he could not see Smith's hands or what he was doing. He acknowledged that while a license check was performed on the driver, he kept his eyes on Smith and did not watch the backseat passenger. He stated that while he searched the car, he did not wear gloves nor did he wear gloves when handling the recovered weapons. No evidence technician was called to the scene, and no photographs were taken of the car or the guns. Likewise, no one inventoried or photographed the luggage. Sergeant Rochowicz did not write down Smith's statement, nor did he give him paper on which to write down his statement. An assistant State's Attorney did not take a statement nor was a statement recorded or videotaped.

¶ 13 On redirect, Sergeant Rochowicz stated that he has pulled over a vehicle and found something illegal hundreds of times in his career. He testified that the police do not call an evidence technician to the scene every time, usually only if a shooting occurred or if a burglary with an unknown offender occurred. He stated that handwritten statements are usually taken in violent crime situations, and video statements are usually taken in cases of homicide.

¶ 14 Illinois State Police forensic chemist Jeanne Hutcherson testified as an expert in latent print examination. She stated that she examined the revolver and five rounds of ammunition recovered and found with a reasonable degree of scientific certainty no latent prints suitable for identification. Chicago police forensic investigator Herbert Keeler, an expert in fingerprint identification, examined the handgun and one live round of ammunition recovered. He testified that he could only recover "partials and smudges."

¶ 15 The parties stipulated that Smith had been convicted previously of a qualifying felony. Specifically, Smith had a prior conviction of the Class 2 felony offense of AUUW under case No. 05 CR 17607. Smith's conviction under case No. 05 CR 17607, in turn, was supported by his prior felony conviction under case No. 05 CR 13735 for a violation of section 24-1.6(a)(1), (a)(3)(A) of the Criminal Code of 1961 (Code) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West

2004)). The State rested, and defense counsel made a motion for a directed finding, which the trial court denied. Defense counsel rested without presenting evidence. The jury found Smith guilty of UUWF regarding the handgun and AUUW regarding the revolver. After denying Smith's motion for a new trial, the trial court merged his AUUW conviction into his UUWF conviction and sentenced Smith to five years' imprisonment. Smith filed this timely appeal.

¶ 16                                                ANALYSIS

¶ 17     Smith's first contention is that the trial court erred when it "*sua sponte* precluded [his] attorney from cross-examining Officer Moore" about Smith's alleged statement and foiled counsel's attempt to impeach Officer Moore by omission using his police report. Smith has forfeited this issue on review, however, by failing to object at trial during the cross-examination. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (in order to preserve an issue for review, defendant must make an objection at trial and include the issue in a posttrial motion). Smith also failed to set forth an offer of proof at trial. "[I]n order to preserve an issue concerning the trial court's preclusion of impeaching evidence at trial, the defendant must set forth an offer of proof at trial." *People v. Wallace*, 331 Ill. App. 3d 822, 831 (2002).

¶ 18     This court may review forfeited issues as plain error; however, we first must determine whether any error occurred. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009). In reviewing the transcript of Officer Moore's cross-examination outlined above, it is unclear whether defense counsel was attempting to impeach him by omission regarding Smith's statement allegedly contained in his police report. Defense counsel generally asked about information contained in a police report, and the trial court properly responded that police reports are not admissible evidence. The record shows that it was during the cross-examination of Sergeant Rochowicz wherein Rochowicz stated that he had put in a police report that Smith made the statement. Defense counsel did not inquire further into the police report, and the trial court did not interject at that time. The trial court could not have committed error if it did not preclude defense counsel from questioning Sergeant Rochowicz about his police report.

¶ 19     Even if the trial court improperly limited defense counsel's cross-examination of Officer Moore, the error warrants reversal of Smith's conviction "only where there has been a clear abuse of discretion and a showing of manifest prejudice to the defendant." (Internal quotation marks omitted.) *People v. Porter*, 96 Ill. App. 3d 976, 983 (1981). Any error in restricting cross-examination of a witness whose testimony merely supports the prosecution, "or on whose credibility alone the prosecution does not rest, must be deemed harmless." (Internal quotation marks omitted.) *Id.* Here, both Officer Moore and Sergeant Rochowicz testified that Smith made the statement, so the prosecution did not rely on Officer Moore's credibility alone to support its case. Therefore, any error in restricting Officer Moore's cross-examination may be deemed harmless.

¶ 20     Smith also makes a brief argument, without citation to authority, that the trial court improperly sustained two State objections and overruled one defense objection, during closing arguments. Specifically, Smith contends that the trial court erred in allowing the State to argue that Smith's statement "was documented in the report" when the testimony showed that no one wrote down the statement or gave Smith an opportunity to write it down. However, the prosecutor has great latitude in making a closing argument and may properly "comment on the evidence and any fair, reasonable inferences it yields." *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005). Sergeant Rochowicz stated that in his police report he put down that Smith had made a

statement. A reasonable inference from that evidence is that he wrote down Smith's statement in the report. Furthermore, defense counsel was permitted to rebut the State in closing argument by arguing that the only evidence of Smith's statement is contained in the officers' oral testimony. We find no error here.

¶ 21    Smith, however, also contends that we must vacate his conviction for UUWF in light of our supreme court's decision in *People v. Aguilar*, 2013 IL 112116. In *Aguilar*, the issue before our supreme court was "whether the Class 4 form of section 24-1.6(a)(1), (a)(3)(A), (d) violates the second amendment right to keep and bear arms." *Id.* ¶ 18. The court found that the second amendment protects a person's right to bear arms for self-defense outside of the home, and because the Class 4 form of the specified section "categorically prohibits the possession and use of an operable firearm for self-defense outside the home," it was unconstitutional on its face. *Id.* ¶¶ 21, 22. Smith's conviction of UUWF was based on his prior felony conviction under case No. 05 CR 13735 for violating section 24-1.6(a)(1), (a)(3)(A) of the Code, the same Class 4 form of AUUW which our supreme court found unconstitutional in *Aguilar*. Smith argues on appeal that we should vacate his UUWF conviction because *Aguilar* rendered the predicate felony (case No. 05 CR 17607) used to prove an element of his offense void and unenforceable.

¶ 22    Our supreme court addressed this issue in *People v. McFadden*, 2016 IL 117424, a case in which the defendant was charged with multiple counts of armed robbery and UUWF, having previously been convicted of the felony offense of AUUW. In *McFadden*, the defendant stipulated at trial that he was convicted of the prior felony conviction. He argued, however, that *Aguilar* has rendered the statute under which he was previously convicted unconstitutional and void *ab initio*; therefore, his prior AUUW conviction may not be used to establish the present UUWF offense. *Id.* ¶¶ 15-16.

¶ 23    Our supreme court agreed that declaring a statute unconstitutional renders the statute void *ab initio*, or void " ' "from the beginning." ' " *Id.* ¶ 17 (quoting *Perlstein v. Wolk*, 218 Ill. 2d 448, 455 (2006), quoting Black's Law Dictionary 1604 (8th ed. 2004)). An unconstitutional statute is unenforceable, and the decision declaring the statute unconstitutional is retroactive. *Id.* ¶ 18. It follows that once a criminal statute is declared facially unconstitutional, "a defendant may not be prosecuted under it and, as a remedy, must be allowed to apply the court's declaration as a basis to vacate his judgment of conviction premised on the facially unconstitutional statute." *Id.* ¶ 19.

¶ 24    The defendant in *McFadden*, however, did not seek to vacate his prior AUUW conviction; rather, he sought to reverse his present "conviction for UUW by a felon, a constitutionally valid offense, by challenging the sufficiency of the evidence to convict him." *Id.* ¶ 21. The defendant thus presented the "different question" of whether a prior conviction based on a statute that has been subsequently declared facially unconstitutional "may nevertheless serve as proof of the predicate felony conviction in prosecuting" a UUWF offense. *Id.*

¶ 25    In making this determination, the *McFadden* court looked at the United States Supreme Court case of *Lewis v. United States*, 445 U.S. 55 (1980), which addressed the issue of whether a constitutionally infirm prior felony conviction could be used as the predicate felony under a federal felon-in-possession-of-a-firearm statute. *McFadden*, 2016 IL 117424, ¶ 22. The Court in *Lewis* examined the language of the federal firearms statute and found that the statute contained " '[n]o exception *** for a person whose outstanding felony conviction ultimately might turn out to be invalid for any reason.' [Citation.]" *Id.* ¶ 23. Thus, the Court determined

that any felony conviction, without intervening action to vacate the conviction, can be the predicate felony of an offense under the federal firearms statute since the only relevant question is defendant's felony status at the time he was charged with unlawful possession of a firearm. *Id.* ¶ 24.

¶ 26 Following *Lewis*, the *McFadden* court looked at the language of the UUWF statute (720 ILCS 5/24-1.1(a) (West 2008)), and found it also requires only that the State prove defendant's felon status. *McFadden*, 2016 IL 117424, ¶ 27. The court determined that the statutory language, as well as the policy and purpose of the UUWF statute, "represents a considered and deliberate decision to require that a prior felony conviction be vacated or expunged before a firearm is possessed." *Id.* ¶ 30. The court reasoned that "[a]lthough *Aguilar* may provide a basis for vacating defendant's prior 2002 AUUW conviction, *Aguilar* did not automatically overturn that judgment of conviction. Thus, at the time defendant committed the UUW by a felon offense, defendant had a judgment of conviction that had not been vacated and that made it unlawful for him to possess firearms." *Id.* ¶ 31. The court held that since the defendant failed to clear his felon status before obtaining the firearm that resulted in his UUWF conviction, his prior AUUW conviction "properly served as proof of the predicate felony conviction for UUW by a felon." *Id.* ¶ 37.

¶ 27 Like the defendant in *McFadden*, Smith presents the question of whether a prior AUUW conviction based on a statute that has been subsequently declared facially unconstitutional "may nevertheless serve as proof of the predicate felony conviction in prosecuting the offense of UUW by a felon." *Id.* ¶ 21. Smith stipulated at trial that he had been convicted previously of a qualifying felony (AUUW). Although *Aguilar* subsequently deemed the AUUW statute unconstitutional on its face, Smith did not clear his felon status prior to obtaining the weapon that led to his conviction under the constitutionally valid UUWF statute. Therefore, following *McFadden*, Smith's prior AUUW conviction properly served as proof of the predicate felony conviction for UUWF, and we affirm his conviction.

¶ 28 Smith, however, urges this court to disregard *McFadden* because *McFadden* did not address the binding United States Supreme Court precedent of *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016). Smith argues that *Montgomery* mandates the reversal of his UUWF conviction because "a court has no authority to leave in place a conviction or sentence that violates a substantive rule, regardless of whether the conviction or sentence became final before the rule was announced" and "[t]here is no grandfather clause that permits States to enforce punishments the Constitution forbids." *Montgomery*, 577 U.S. at ___, 136. S. Ct. at 731. First, we disagree that the supreme court in *McFadden* failed to consider *Montgomery*. As the State points out, counsel in *McFadden* was granted leave to cite *Montgomery* as additional authority, and counsel made the same arguments in support of the motion that Smith makes here.

¶ 29 Furthermore, *Montgomery* did not address the issue we have here. Rather, *Montgomery* cautioned that states have no power to enforce a conviction or penalty barred by the Constitution. *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 729-30. The State does not seek to enforce Smith's invalid felony conviction in contravention of *Montgomery*, and nothing in *McFadden* prevents Smith from seeking to vacate his prior felony conviction. The issue here is whether a prior conviction based on a statute that has been subsequently declared facially unconstitutional may serve as proof of the predicate felony conviction in prosecuting a UUWF

offense. In *McFadden*, our supreme court answered in the affirmative, and this court follows *McFadden* as we are bound to do. See *People v. Artis*, 232 Ill. 2d 156, 164 (2009).

¶ 30 In his second supplemental brief to this court, Smith additionally contends that if this court affirms his UUWF conviction, his offense should be reduced from a Class 2 felony to a Class 3 felony. The offense of UUWF is itself a class 3 felony, and only subsequent violations are class 2 felonies. See 720 ILCS 5/24-1.1(e) (West 2008). Smith argues that since his prior AUUW conviction was used to prove that his recent conviction was a subsequent violation, use of the AUUW conviction improperly enhanced his punishment. Smith contends that although *Lewis* permitted the use of a prior invalid conviction to prove defendant's status as a felon, it expressly forbade using such a conviction to enhance punishment. As support, he points to *Lewis*'s citation to *Burgett v. Texas*, 389 U.S. 109 (1967), and *United States v. Tucker*, 404 U.S. 443 (1972), and the Court's statement in *Lewis* that "its interpretation was consistent" with those cases. Smith, however, reads too much into *Lewis*'s discussion of *Burgett* and *Tucker.*

¶ 31 As the *Lewis* Court noted, *Burgett* and *Tucker* held that a subsequent conviction or sentence was unconstitutional "because it depended upon the reliability of a past uncounseled conviction." *Lewis*, 445 U.S. at 67. The *Lewis* Court held, however, that an uncounseled felony conviction may nonetheless be used as the basis to impose "a civil firearms disability, enforceable by a criminal sanction," and its interpretation was "not inconsistent with" *Burgett* and *Tucker. Id.* The Court in *Lewis* explained that the subsequent conviction or sentence in *Burgett* and *Tucker* depended upon the reliability of the past uncounseled convictions, whereas the federal gun laws at issue in *Lewis* "focus not on reliability, but on the mere fact of conviction *** in order to keep firearms away from potentially dangerous persons. *** Enforcement of that essentially civil disability through a criminal sanction does not 'support guilt or enhance punishment.' [Citation.]" *Id.* Thus, *Lewis* did not forbid the use of a prior uncounseled felony conviction to enhance punishment as Smith contends; rather, *Lewis* determined that the mere enforcement of a statute prohibiting felons from possessing firearms through criminal sanction does not enhance punishment. *Id. Lewis* does not support Smith's argument here.

¶ 32 Also instructive is *People v. Easley*, 2014 IL 115581, in which our supreme court examined section 24-1.1(e) of the UUWF statute to determine whether the defendant was improperly sentenced as a Class 2 offender when the State did not give defendant notice that it intended to charge him with an enhanced Class 2 offense. The defendant in *Easley* was convicted of UUWF and sentenced pursuant to section 24-1.1(e), which provided that a violation of this section is a class 3 felony and "any second or subsequent violation shall be a Class 2 felony ***." 720 ILCS 5/24-1.1(e) (West 2008). The court reasoned that since the defendant had previously been convicted of a felony, as alleged in the indictment, "defendant's Class 2 sentence was the only statutorily allowed sentence under" the statute. *Easley*, 2014 IL 115581, ¶ 22. Therefore, the State need not give such notice because "the prior conviction is already a required element of the offense and only one class of felony is possible for that offense as alleged in the charging instrument." *Id.* ¶ 24. Here, Smith stipulated to his felon status at the time of his UUWF conviction, and his prior felony conviction had not been vacated. Pursuant to *Easley*, Smith's prior AUUW conviction was an element of his UUWF offense and only one class of felony is possible for that offense under section 24-1.1(e). The

State did not impermissibly use Smith's AUUW conviction to enhance his offense to a Class 2 felony.

¶ 33    Smith also argues that his AUUW conviction should be vacated. In light of our supreme court's decision in *People v. Burns*, 2015 IL 117387, we agree. In *Burns*, our supreme court determined that section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute "is facially unconstitutional, without limitation" because it "constitutes a flat ban on carrying ready-to-use guns outside the home." *Id.* ¶ 25. As the court reasoned, "[i]t is precisely because the prohibition is not limited to a particular subset of persons, such as felons, that the statute, *as written*, is unconstitutional on its face." (Emphasis in original.) *Id.* Therefore, the provision is not enforceable against anyone, including Smith, and we vacate his conviction for AUUW. *Id.* ¶ 32.

¶ 34    For the foregoing reasons, we affirm Smith's UUWF conviction and sentence and vacate his AUUW conviction and sentence.

¶ 35    Affirmed in part and vacated in part.