# Illinois Official Reports

## Appellate Court

*People v. Spivey*, 2017 IL App (1st) 123563

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD SPIVEY, Defendant-Appellant. |
| District & No. | First District. Third Division<br>Docket No. 1-12-3563 |
| Filed | May 17, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-13096; the Hon. Neil J. Linehan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Shawn O'Toole, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and John E. Nowak, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion.<br>Justice Lavin concurred in the judgment and opinion.<br>Justice Hyman specially concurred, with opinion. |

**OPINION**

¶ 1        Following a bench trial, defendant Donald Spivey was found guilty of two counts of unlawful use of a weapon by a felon (UUWF) and two counts of aggravated unlawful use of a weapon (AUUW). The trial court merged the convictions and sentenced defendant to four years' imprisonment, followed by two years of mandatory supervised release (MSR), for his conviction on count two for UUWF. Initially on appeal, we vacated defendant's UUWF conviction under count two "because 'the State did not prove an essential element of the offense where it alleged in the charging instrument and proved at trial a predicate offense that has been declared unconstitutional and void *ab initio*.' " *People v. Spivey*, 2015 IL App (1st) 123563-U, ¶¶ 21, 25 (quoting *People v. McFadden*, 2014 IL App (1st) 102939, ¶ 43, *aff'd and rev'd in part*, 2016 IL 117424).

¶ 2        On September 28, 2016, the supreme court denied the State's petition for leave to appeal but entered a supervisory order directing us to vacate our judgment and to reconsider the matter in light of *People v. McFadden*, 2016 IL 117424, to determine if a different result is warranted. *People v. Spivey*, No. 119492 (Ill. Sept. 28, 2016). For the reasons that follow, we conclude that a different result is warranted.

¶ 3                                                    BACKGROUND

¶ 4        The record shows that defendant was charged by information, under case number 10 CR 13096, with one count of armed habitual criminal (count one), two counts of UUWF (counts II and III), and four counts of AUUW (counts IV, V, VI, and VII). The State nol-prossed[1] counts I, V, and VII, then entered into evidence a certified statement of defendant's prior conviction for AUUW in case number 04 CR 18579, and the matter proceeded to trial on the remaining four counts.

¶ 5        Specifically, count II charged defendant with committing the offense of UUWF in that he knowingly possessed "on or about his person any weapon prohibited by section 24-1 of this Code," to wit: a firearm after having been previously convicted of AUUW under case number 04 CR 18579 (720 ILCS 5/24-1.1(a) (West 2010)). Count III charged defendant with committing the offense of UUWF in that he knowingly possessed firearm ammunition after having been previously convicted of AUUW under case number 04 CR 18579 (720 ILCS 5/24-1.1(a) (West 2010)). Count IV charged defendant with committing the offense of AUUW in that he knowingly carried an uncased, loaded, and immediately accessible firearm on his person and outside his home (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2010)). And count VI charged defendant with committing the offense of AUUW in that he knowingly carried or possessed an uncased, loaded, and immediately accessible firearm on his person, upon a public way (720 ILCS 5/24-1.6(a)(2), (a)(3)(A) (West 2010)). Additionally, counts IV and VI indicated that "The State shall seek to sentence [defendant] as a class two offender in that he has been previously convicted of the offense of [AUUW] under case number 04CR18579." We take judicial notice of the charging instrument and the circuit court clerk's docket in case number 04 CR 18579 that defendant included in his appendix to the brief (Ill. S. Ct. R. 342 (eff. Jan. 1, 2005)), which reflect that he was convicted of the Class 4 version of AUUW under

_____

[1]The State has not requested that this cause be remanded to the trial court for reinstatement of the nol-prossed charges.

count one,[2] alleging that he knowingly carried an uncased, loaded, and immediately accessible firearm on his person and outside his home (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2010)). See *People v. Jimerson*, 404 Ill. App. 3d 621, 634 (2010) (reviewing court may take judicial notice of public records and other judicial proceedings).

¶ 6 At trial, Chicago police officer Jason Perez testified that at 4:55 a.m. on July 3, 2010, he and his partner, Officer Antonio De Carlo, were on routine patrol in the area of 6836 South May Street, where he observed defendant standing on the sidewalk about 20 feet away with a black object resembling the handle of a revolver tucked into his waistband. Officer Perez made eye contact with defendant, who then walked away with his arms around his waist. Officer Perez exited his squad car, announced his office, and pursued defendant through a nearby gangway, into the backyard of the abandoned house at 6836 South May Street. There, defendant threw an object that made a metallic sound when it struck the chain-link fence at the north side of the backyard. The pursuit continued through an alley, across Racine Avenue, and ended with defendant's arrest in a vacant lot.

¶ 7 Chicago police officer Andres Zepeda testified that he and other responding officers arrived on the scene and helped place defendant into custody. He was then directed by Officer Perez to search along the chain-link fence in the backyard of the abandoned house at 6836 South May Street. There, he recovered a loaded .357-caliber revolver along the north side of the chain-link fence. Officer Perez arrived in the backyard and identified the firearm as the same black revolver that he observed defendant holding minutes ago.

¶ 8 Defendant presented the testimony of Artamese Prewitt and Kathy Johnson, both of whom testified that defendant did not have a gun. Additionally, defendant testified that he was living with his cousin at 6838 South May Street when the incident at bar occurred. He testified that he was drinking alcohol on his front yard when police officers pulled up in a squad car, exited, and approached him. He explained that he ran when the officers called him because he had an open container of alcohol and a warrant from Wisconsin for unpaid child support. Defendant maintained that he threw his bottle of alcohol at the chain-link fence in the backyard, and he denied having a weapon.

¶ 9 In finding defendant guilty, the trial court stated, "So as to count 2, there will be a finding of guilty. Counts 3, 4, and 6 will merge with *** count 2 in the charging document," and sentenced defendant to four years' imprisonment for his UUWF conviction on count II. Defendant timely appealed.

¶ 10 ANALYSIS

¶ 11 Defendant contends in his supplemental brief that United States Supreme Court precedent requires that his UUWF conviction be reversed, citing *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016), and *Ex Parte Siebold*, 100 U.S. 371 (1879). Defendant argues that "nothing in *McFadden* stands in the way of this Court applying that controlling precedent, as it

_____

[2]The circuit court clerk's docket in case number 04 CR 18579 reflects that defendant pleaded guilty to count I (AUUW), and the criminal history reports attached to the presentence investigation report in the common law record in this appeal reflect that the State nol-prossed the remaining three AUUW counts in case number 04 CR 18579, of which count II was based on defendant's possession of a firearm without a valid FOID card and counts III and IV were based on his possession of a firearm on a public way.

is bound to do" because *McFadden* did not address those two cases. Alternatively, defendant contends that if this court affirms his UUWF conviction, the felony classification of the offense must be reduced from a Class 2 to a Class 3 felony pursuant to *Lewis v. United States*, 445 U.S. 55, 65-67 (1980), which *McFadden* "did address and adopt."

¶ 12    The State responds in its supplemental brief that our supreme court was well aware of *Montgomery* and *Siebold* when it decided *McFadden* because it allowed McFadden to cite *Montgomery* as additional authority, neither the majority nor the dissent in *McFadden* ultimately cited *Montgomery* or *Siebold* because they were irrelevant, and "although McFadden in his petition for rehearing made the same argument defendant now makes regarding those cases, the supreme court denied rehearing." The State argues that this court is obligated to follow *McFadden* and affirm defendant's UUWF conviction because we lack the authority to overrule decisions of the Illinois Supreme Court, citing *People v. Artis*, 232 Ill. 2d 156 (2009), and *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 28. The State also responds that defendant's alternative argument is based on the mistaken premise that his prior AUUW conviction was used to enhance his sentence.

¶ 13    We observe that the same contentions defendant raises here were considered and rejected in *People v. Smith*, 2017 IL App (1st) 122370-B, and defendant offers no new grounds that would warrant a different result in this case. *People v. Madej*, 177 Ill. 2d 116, 165 (1997). In *Smith*, 2017 IL App (1st) 122370-B, ¶¶ 27-31, the issue was whether a prior AUUW conviction based on a statute that has been subsequently declared facially unconstitutional may serve as proof of the predicate felony in prosecuting an UUWF offense. At trial, Smith stipulated that he had previously been convicted of a qualifying predicate felony, *i.e.*, AUUW. *Id.* ¶ 27. Although *People v. Aguilar*, 2013 IL 112116,[3] declared the AUUW statute facially unconstitutional, Smith did not clear his felon status before obtaining the revolver that led to his conviction under the constitutionally valid UUWF statute. *Smith*, 2017 IL App (1st) 122370-B, ¶ 27. Pursuant to *McFadden*, the appellate court determined that Smith's prior AUUW conviction properly served as proof of the predicate felony conviction for UUWF and affirmed his conviction therefore. *Id.* In doing so, the appellate court rejected Smith's argument that *McFadden* should be disregarded, as it did not address the binding United States Supreme Court precedent of *Montgomery*, noting that counsel in *McFadden* was granted leave to cite *Montgomery*. *Id.* ¶ 28. The appellate court further determined that *Lewis* did not forbid the use of a prior felony conviction to enhance his sentence; rather, Smith's prior AUUW conviction was an element of UUWF and only one class of felony is statutorily possible for UUWF under these circumstances, namely a Class 2 felony. *Id.* ¶¶ 31-32.

¶ 14    Here, as in *Smith*, we disagree with defendant that the supreme court in *McFadden* failed to address binding United States Supreme Court precedent in *Montgomery* and *Siebold*. *Id.* ¶ 28. Likewise, we disagree with defendant that if this court affirms his UUWF conviction, the felony classification of the offense must be reduced to a Class 3 felony pursuant to *Lewis*. *Id.* ¶¶ 31-32. Pursuant to *McFadden*, we conclude that defendant's prior AUUW conviction satisfied the predicate felony element of UUWF because he did not clear his felon status before obtaining a firearm. *McFadden*, 2016 IL 117424, ¶ 37.

---

[3]After the original Rule 23 order in this appeal was filed, our supreme court decided *People v. Burns*, 2015 IL 117387, ¶ 25, which clarified its holding in *Aguilar*, stating that section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute is facially unconstitutional "without limitation."

- 4 -

¶ 15      In addition, the author agrees with the special concurrence that the ripple effects of *Aguilar* and *McFadden* are best resolved by the legislature.

¶ 16                                         CONCLUSION

¶ 17      For the reasons stated, we affirm defendant's UUWF conviction and sentence.

¶ 18      Affirmed.

¶ 19      JUSTICE HYMAN, specially concurring.

¶ 20      I agree with my colleagues that *People v. McFadden* controls the result. I write separately to discuss the practical impact of *Aguilar*—or rather, the lack of practical impact, which is exemplified by Spivey's appeal (and many others).

¶ 21      In *Aguilar*, our supreme court held that portions of the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)) were unconstitutional. *Aguilar*, 2013 IL 112116, ¶ 22; see also 720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008) (person commits aggravated unlawful use of weapon when he or she knowingly carries on or about his or her person any pistol, revolver, stun gun, Taser, or other firearm and the firearm possessed is uncased, loaded, and immediately accessible). *McFadden* acknowledges that a number of people convicted of AUUW under that statute should not have been convicted because that statute was void *ab initio*. But it also holds that "[t]he remedy is to challenge the judgment of conviction and have the unlawful judgment of conviction set aside before deciding to possess a firearm." *McFadden*, 2016 IL 117424, ¶ 34. I recognize the legal logic of *McFadden*, but on a practical level, we are through the looking-glass. Because McFadden (and Spivey, and many others) did not use *Aguilar* to vacate their prior, unconstitutional convictions, they are still felons though those felonies no longer exist.

¶ 22      Spivey was convicted of the predicate AUUW offense (later held void *ab initio*) in 2004. He was charged with the offenses in 2010. But *Aguilar* was not issued until 2013—how was Spivey to take advantage of *Aguilar* and "have the unlawful judgment of conviction set aside before deciding to possess a firearm" in 2010, when *Aguilar* did not yet exist? (The same applies to McFadden himself, whose predicate felony took place in 2002 before being charged again in 2008. He could not have had the 2002 conviction vacated before his 2008 charge.) If Spivey (and McFadden *et al.*) had not been represented by counsel for the 2010 offenses, would he ever have known that his 2004 offense was void *ab initio*?

¶ 23      This issue presents itself to us in contexts like this one—where a person has been convicted of AUUW and commits a subsequent crime that is aggravated due to that previous AUUW conviction. But *Aguilar* also applies to some unknown number of felons who committed an AUUW offense that is now void *ab initio* but have not committed subsequent offenses. What is the likelihood that those people know that their convictions could now be vacated? How many of them have heard of *Aguilar* or have access to attorneys who could help them pursue vacating their now-void convictions?

¶ 24      Declaring the statute unconstitutional is only a half-measure. We cannot realistically expect the public to read judicial pronouncements and seek their own justice without assistance or depend on defense attorneys to hunt up their old clients who might be affected by *Aguilar*. And why should criminal defendants—often poor, struggling, jobless, dependent on public

funding for their defenses, unsophisticated, and mostly black or brown—bear the burden to file the necessary paperwork for vacating their convictions, when those convictions were caused by a legislature passing an ultimately unconstitutional statute? The need for a solution cannot be ignored. As former Supreme Court Justice Sandra Day O'Connor once said, " 'A nation's success or failure in achieving democracy is judged in part by how well it responds to those at the bottom, and the margins, of the social order.' " *The Third Annual William French Smith Memorial Lecture: A Conversation With Retired Justice Sandra Day O'Connor*, 37 Pepp. L. Rev. 63, 65 (2009) (quoting Sandra Day O'Connor, The Majesty of the Law (2d ed. 2004)).

¶ 25    The legislature should consider whether it is right that these old convictions, based on an unconstitutional statute, may be used to create "felon status" in subsequent prosecutions. In a situation where the judicial branch cannot help people harmed by a statute, it is incumbent on the Illinois legislature, the promulgators of the unconstitutional criminal statute, to avoid compounding an injustice in the system by fixing it. This requires giving validity and effect to the supreme court's decision that "the offense used as the predicate felony for the UUW by a felon charge *** 'was constitutionally infirm' when it was enacted and must be treated as if its underlying statute was never operative." *McFadden*, 2016 IL 117424, ¶ 58. Otherwise, the doctrine of void *ab initio* lacks the legal effect demanded by the Illinois Constitution and to which the offenders are legally entitled.

¶ 26    The legislature should consider amending the relevant statutes to indicate that if a person was convicted under the unconstitutional AUUW statute, that void conviction may not be used to enhance a later charge. This amendment would go a long way to undo the damage caused by an unconstitutional law.

¶ 27    A bedrock principle of our democracy is that offenders like Spivey, whose convictions render them highly unsympathetic, still have basic rights, freedoms, and protection under the law. It behooves the legislature to craft relief ensuring that there are no lingering or long-term adverse effects due to reliance on a conviction under an invalid statute. As the great Justice Holmes wrote, "it must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts." *Missouri, Kansas & Texas Ry. Co. of Texas v. May*, 194 U.S. 267, 270 (1904).