# Illinois Official Reports

## Appellate Court

*People v. Smith*, 2017 IL App (1st) 151643

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ZACHARY SMITH, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-15-1643 |
| Filed<br>Rehearing denied | September 29, 2017<br>October 27, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-22324; the Hon. Erica L. Reddick, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; mittimus corrected. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Darren E. Miller, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, and Margaret M. Smith, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Justice Simon concurred in the judgment and opinion.<br>Justice Harris specially concurred, with opinion. |

**OPINION**

¶ 1      Following a bench trial, defendant Zachary Smith was convicted of being an armed habitual criminal (AHC) and for unlawful use of a weapon by a felon (UUWF). Mr. Smith was sentenced on the AHC charge to a prison term of six years, followed by three years of mandatory supervised release (MSR), and on the UUWF charge to a concurrent sentence of two years. On appeal, Mr. Smith argues that we must vacate his AHC conviction because one of the predicate convictions for that offense was for aggravated unlawful use of a weapon (AUUW), under a statutory provision later held by the Illinois Supreme Court to be facially unconstitutional. Mr. Smith alternatively asks us to correct his mittimus because—under the one-act, one-crime rule—he cannot be convicted of both AHC and UUWF based on the same act of possessing a firearm. For the reasons that follow, we affirm Mr. Smith's AHC conviction and vacate his UUWF conviction.

¶ 2      BACKGROUND

¶ 3      Mr. Smith was charged in this case with one count of AHC—premised on his prior convictions for AUUW (case No. 09 CR 16524) and UUWF (case No. 07 CR 12576)—and three counts of UUWF. At his bench trial, the State introduced certified copies of both prior convictions. The State also presented the testimony of two Chicago police officers, who testified that on the evening of October 25, 2013, they entered an apartment to investigate a reported domestic battery and observed Mr. Smith with a gun in his hand. The officers arrested Mr. Smith and advised him of his *Miranda* rights. According to the officers, Mr. Smith explained to them that he was holding the gun because he thought the officers were members of his ex-girlfriend's family coming to seek revenge against him for having battered her.

¶ 4      Two witnesses testified for the defense. Mr. Smith's ex-girlfriend, Lakeisha Horton, testified that there was a party at her apartment on the afternoon of October 25, 2013. According to Ms. Horton, a fight broke out at the party, and she threatened to call the police. Those attending the party fled, leaving some of their possessions behind. When Mr. Smith later arrived to collect some clothing he had left at the apartment, he brought another woman with him, angering Ms. Horton and causing her to falsely report that he had battered her. Ms. Horton testified that there was a gun on the floor by the garbage can when officers arrived in response to her call, but it did not belong to Mr. Smith. Mr. Smith's girlfriend, Laquita Handy, testified that she was the woman who accompanied Mr. Smith to Ms. Horton's apartment to retrieve his clothing that day and, to her knowledge, he did not have a weapon with him at that time.

¶ 5      The trial court found the testimony of the officers to be more credible than that of the defense witnesses and found Mr. Smith guilty as charged. The court denied Mr. Smith's post-trial motion and sentenced him to six years of imprisonment and three years of MSR on the AHC count, merged the remaining counts into a single count of UUWF, and sentenced him to a concurrent two-year sentence on that count. This appeal followed.

¶ 6                              JURISDICTION

¶ 7      The trial court sentenced Mr. Smith on May 7, 2015, and he filed his notice of appeal the same day. We therefore have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 and 606, governing appeals from final judgments of conviction in criminal cases (Ill. S. Ct. Rs. 603, 606 (eff. Feb. 6, 2013)).

¶ 8                               ANALYSIS
¶ 9                          A. Predicate Conviction
¶ 10     On appeal, Mr. Smith argues that his AHC conviction must be vacated because one of the two predicate convictions the State relied on to support that charge was pursuant to a statutory provision later held to be facially unconstitutional and thus void *ab initio*.

¶ 11     To support a conviction for AHC, the State must prove beyond a reasonable doubt that a defendant possessed a firearm after having been convicted two or more times of certain enumerated offenses, including AUUW and UUWF. 720 ILCS 5/24-1.7(a)(2) (West 2012). One of Mr. Smith's two prior convictions was his 2009 conviction for AUUW, which he says was under the section of the Criminal Code of 1961 that prohibited the carrying of an "uncased, loaded, and immediately accessible" firearm outside the home. 720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008). In *People v. Aguilar*, 2013 IL 112116, ¶ 22—as clarified in *People v. Burns*, 2015 IL 117387, ¶¶ 22, 32—our supreme court struck down that portion of the AUUW statute as facially unconstitutional, concluding that it violated the right to keep and bear arms guaranteed by the second amendment to the United States Constitution.

¶ 12     Recently, in *People v. McFadden*, 2016 IL 117424, our supreme court considered the effect of its holding in *Aguilar* on a defendant's subsequent conviction for UUWF, which required the State to prove that a defendant who "has been convicted of a felony" knowingly possessed a firearm (720 ILCS 5/24-1.1(a) (West 2008)). The defendant in that case claimed that his predicate felony conviction was under the portion of the AUUW statute held to be unconstitutional in *Aguilar*. *McFadden*, 2016 IL 117424, ¶ 16. The *McFadden* court began with the proposition that, "[w]hen a statute is held to be facially unconstitutional, the statute is said to be void *ab initio*, *i.e.*, void from the beginning." (Internal quotation marks omitted.) *Id.* ¶ 17. It noted that a defendant may not be prosecuted under a facially unconstitutional statute and, "as a remedy, must be allowed to apply the court's declaration as a basis to vacate [the] judgment of conviction." *Id.* ¶ 19. But the defendant in *McFadden* did not seek to vacate his prior AUUW conviction. *Id.* ¶ 21. He instead challenged his subsequent UUWF conviction, arguing that the State could not rely on his constitutionally invalid AUUW conviction as the predicate felony for the UUWF conviction. *Id.*

¶ 13     The *McFadden* court did not agree. Noting that its own precedent applying the void *ab initio* doctrine did not resolve the question, it looked to the United States Supreme Court's decision in *Lewis v. United States*, 445 U.S. 55 (1980). *McFadden*, 2016 IL 117424, ¶ 22. There, the Court was asked to consider whether a prior felony conviction, which the defendant claimed was constitutionally infirm because he was unrepresented by counsel, could nevertheless be used by the government as the predicate felony for a charge that the defendant had violated the federal felon-in-possession-of-a-firearm statute. *Lewis*, 445 U.S. at 65. The *McFadden* court concluded that the plain language of the UUWF statute, like the

plain language of the statute at issue in *Lewis*, evidenced the legislature's intent to subject a broad category of individuals to a prohibition on gun possession. *McFadden*, 2016 IL 117424, ¶¶ 23, 28-29. In the *McFadden* court's view, neither statute required the government to prove the predicate offense itself, but merely the defendant's *status* as a convicted felon, a status that " '[w]ould cease only when the conviction upon which the status depend[ed] ha[d] been vacated.' " *Id.* ¶ 29 (quoting *Lewis*, 445 U.S. at 61 n.5). Under *McFadden*, the burden is thus on a criminal defendant who has been convicted under a facially unconstitutional statute to clear his status as a felon through the judicial process to avoid future convictions predicated in part on that status. *Id.* ¶ 30.

¶ 14 Like the defendant in *McFadden*, Mr. Smith has not sought to vacate his prior AUUW conviction, but contends that it cannot properly serve as a predicate offense for a later conviction. Mr. Smith argues that we should not follow *McFadden* because it is inconsistent with the United States Supreme Court's decisions in *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016), and *Ex Parte Siebold*, 100 U.S. 371 (1879). He also argues that the *McFadden* court's reliance on *Lewis* is inapplicable here because the AHC statute requires the State to prove more than just a defendant's status as a convicted felon. In response, the State insists that *McFadden* unequivocally dictates the result in this case.

¶ 15 For the reasons discussed below, we agree with the State—and with the other panels of this court that have considered this issue—that we are bound by precedent to affirm Mr. Smith's AHC conviction. There is no doubt that the holding in this case and others like it extends the reach of *McFadden* and greatly increases the collateral consequences of a constitutionally invalid criminal conviction. We join the other members of this court who have recognized that this inequitable result calls out for a legislative remedy.

¶ 16 Whether a conviction may properly serve as a predicate offense is a question of law, which we review *de novo*. *People v. O'Neal*, 2016 IL App (1st) 132284, ¶ 29. The specific legal question presented here—whether the rule in *McFadden* that an invalid conviction can serve as a predicate offense for a subsequent conviction should be applied in cases where the subsequent conviction is for AHC, rather than UUWF—is one this court has already considered a number of times. We first held, in *People v. Perkins*, that the rule announced in *McFadden* indeed applies to convictions for AHC. *People v. Perkins*, 2016 IL App (1st) 150889, ¶ 10. And in the year since *Perkins* was decided, this court has repeatedly reaffirmed that holding. See, *e.g.*, *People v. McGee*, 2017 IL App (1st) 141013-B, ¶¶ 19-27; *People v. Cowart*, 2017 IL App (1st) 113085-B, ¶¶ 43-54; *People v. Fields*, 2017 IL App (1st) 110311-B, ¶¶ 38-49; *People v. Faulkner*, 2017 IL App (1st) 132884-B, ¶¶ 15-33.

¶ 17 Mr. Smith attacks the holding in these cases on two fronts. First, he insists that the United States Supreme Court's decisions in *Montgomery* and *Siebold* require us to disregard *McFadden*. In *Montgomery*, the Court held that the prohibition on mandatory life sentences without parole for juvenile offenders established in *Miller v. Alabama*, 567 U.S. 460, 465 (2012), was a new substantive rule that should be given retroactive effect. *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 734. The Court reiterated a point it had made over 100 years ago in *Siebold*, "that when a State enforces a proscription or penalty barred by the Constitution, the resulting conviction or sentence is, by definition, unlawful." *Id.* at ___, 136 S. Ct. at 729-30. See also *Siebold*, 100 U.S. at 376-77 (noting that a conviction under an unconstitutional law "is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment").

- 4 -

¶ 18    We do not agree that the holding in *McFadden* is precluded or limited by either *Montgomery* or *Siebold*. As we have noted before, our supreme court was well aware of those cases when it issued its opinion in *McFadden*. See *McGee*, 2017 IL App (1st) 141013-B, ¶ 25 (noting that defense counsel in *McFadden* was granted leave to cite *Montgomery*—which in turn cites *Siebold*—as supplemental authority). In *Montgomery*, the United States Supreme Court merely reaffirmed that "states have no power to enforce a conviction or penalty barred by the Constitution." *People v. Smith*, 2017 IL App (1st) 122370-B, ¶ 29 (citing *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 729-30). But the State here did not attempt to *enforce* Mr. Smith's invalid AUUW conviction; rather, it presented evidence of the *existence* of the conviction to establish an element of another crime. We have relied on this distinction to reject substantially similar arguments in other cases. See, *e.g.*, *id.*; *Perkins*, 2016 IL App (1st) 150889, ¶ 9. Pursuant to *McFadden*, it is irrelevant that Mr. Smith might very well succeed if he availed himself of the judicial process to vacate his prior AUUW conviction. Mr. Smith failed to take such steps and the conviction thus remained on his record.

¶ 19    Presenting a more difficult question, Mr. Smith also contends that the AHC statute, which requires the State to prove the existence of two specific qualifying convictions, is qualitatively different from both the UUWF statute at issue in *McFadden* and the federal felon-in-possession statute in *Lewis*, which require only proof of a defendant's status as a felon to make the act of possessing a firearm illegal. Mr. Smith contends that the AHC statute is more like the penalty-enhancing recidivist statute at issue in *United States v. Bryant*, 579 U.S. ___, ___, 136 S. Ct. 1954, 1961 (2016). In that case, the Supreme Court held that prior convictions obtained in tribal court—where a defendant is not provided with counsel but where this is permissible under tribal law and thus constitutional—could still be used as predicate convictions for purposes of a state recidivist statute. *Id.* at ___, 136 S. Ct. at 1966. At the same time, however, the Court reaffirmed the broader rule, first stated in *Burgett v. Texas*, 389 U.S. 109 (1967), that it is impermissible for a conviction obtained in violation of the Constitution to be used in a subsequent proceeding " 'either to support guilt or enhance punishment for another offense.' " *Bryant*, 579 U.S. at ___, 136 S. Ct. at 1962 (quoting *Burgett*, 389 U.S. at 115); see also *United States v. Tucker*, 404 U.S. 443, 447-48 (1972) (remanding for resentencing where the trial court "gave specific consideration to the [defendant's] previous convictions" during sentencing but where "two of those convictions were wholly unconstitutional"); *Loper v. Beto*, 405 U.S. 473, 483 (1972) (plurality opinion) (concluding that the *Burgett* rule against the use of uncounseled prior convictions to prove guilt was also intended to prohibit their use to impeach a defendant's credibility as a witness).

¶ 20    The premise for both the Supreme Court's decision in *Lewis* and our supreme court's decision in *McFadden* was that the UUWF statute and the federal felon-in-possession statute were different from general recidivist statutes. *McFadden*, 2016 IL 117424, ¶¶ 23, 29. Both employed criminal penalties to enforce what was essentially a civil prohibition against gun possession on all individuals with felon status. *Id.* Both courts viewed this status-based disability as one that could " 'cease only when the conviction upon which that status depend[ed] ha[d] been vacated.' " *Id.* ¶ 29 (quoting *Lewis*, 445 U.S. at 61 n.5). *Lewis* made clear that using a constitutionally invalid prior conviction as the basis for imposing a civil firearms disability in this way was "not inconsistent with *Burgett*, *Tucker*, and *Loper* [and]

\*\*\* d[id] not 'support guilt or enhance punishment.' " *Lewis*, 445 U.S. at 67 (quoting *Burgett*, 389 U.S. at 115).

We agree with Mr. Smith that the AHC statute is quite different from the statutes in *McFadden* and *Lewis*. A defendant in an AHC case is already "disabled" from having a gun by virtue of a first felony. The second felony required by the statute does not result in the imposition of any new disability; it simply increases—significantly—the criminal sanction used to enforce the disability. Here, Mr. Smith, who was already disqualified from possessing a gun because of his first qualifying felony conviction, now faces a Class X sentence based solely on his prior AUUW conviction, which the State does not dispute is constitutionally invalid under *Aguilar*. Under these circumstances, it is difficult to conclude that the invalid conviction is relied on for anything other than to "enhance punishment," something the *Lewis* Court made clear is still prohibited under *Burgett*. *Id.*

The problem with Mr. Smith's reliance on *Burgett* and its progeny, however, is that the rule stated in those cases was limited some time ago by the Supreme Court, as it explained in *Custis v. United States*, 511 U.S. 485, 496 (1994). There, the Court ruled that, under the Armed Career Criminal Act of 1984 (18 U.S.C. § 924(e) (1990))—which requires enhanced sentences for those convicted of possessing firearms after having received three prior convictions for violent felonies or drug offenses—the government was entitled to rely on the defendant's prior convictions without considering whether those convictions were constitutionally invalid because the defendant had received ineffective assistance of counsel or because his guilty plea had not been voluntary. *Custis*, 511 U.S. at 496-97. The Court refused to extend the right to mount a collateral attack on a prior conviction in later proceedings—the right contemplated in cases like *Burgett* and *Bryant*—beyond those cases where the defendant was denied the right to have appointed counsel, as established in *Gideon v. Wainwright*, 372 U.S. 335 (1963). *Custis*, 511 U.S. at 496-97. Where, as here, a prior conviction is challenged on any non-*Wainright* basis, the *Burgett* line of cases do not support the argument that it is unconstitutional to use the fact of the prior conviction to establish the elements of a subsequent crime.

Of course, just because something is constitutional does not mean that it is what our legislature intended. But on that score, we are bound by our supreme court's construction of the relevant statutory language in *McFadden*. There, the court concluded from the legislature's use of the past tense in the phrase "has been convicted" (720 ILCS 5/24-1.1(a) (West 2008)) that "[n]othing on the face of the [UUWF] statute suggests any intent to limit the language to only those persons whose prior felony convictions are not later subject to vacatur." *McFadden*, 2016 IL 117424, ¶ 27. And as *McFadden* made clear, the maxim that a conviction is deemed valid until judicial process had declared it otherwise applies even to convictions under statutory provisions deemed void *ab initio*. *Id.* ¶ 31. As a matter of statutory interpretation, Mr. Smith provides us with no basis by which to distinguish the AHC statute, which also focuses on whether a defendant possessed a weapon "after having been convicted" of the predicate felonies (720 ILCS 5/24-1.7(a) (West 2008)), from the UUWF statute.

In sum, *McFadden* and *Custis* control the result in this case. Although Mr. Smith's arguments raise important distinctions between the AHC statute at issue in this case and the UUWF statute at issue in *McFadden*, we are not at liberty to reach a different result in this case based on those distinctions. We are constrained on the one hand by the *McFadden*

court's interpretation of the legislative text and, on the other, by limits placed on the *Burgett* line of cases by the United States Supreme Court in *Custis*. See *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 28 ("Where the [s]upreme [c]ourt has declared the law on any point, it alone can overrule and modify its previous opinion, and the lower judicial tribunals are bound by such decision and it is the duty of such lower tribunals to follow such decision in similar cases." (Internal quotation marks and emphasis omitted.)); *People v. Battiste*, 133 Ill. App. 2d 62, 65 (1971) (noting that decisions of the United States Supreme Court likewise "have binding effect on all lower courts whether state or federal" (internal quotation marks omitted)). Under these authorities, it appears permissible to use a conviction held invalid under *Aguilar* as a predicate offense under the AHC statute.

¶ 25     As Mr. Smith acknowledges in his reply brief, his alternative request, that we hold this matter in abeyance pending the United States Supreme Court's disposition of the petition for a writ of *certiorari* filed in *McFadden*, is now moot, as that petition was denied on June 26, 2017. *People v. McFadden*, 2016 IL 117424, *cert. denied*, ___ U.S. ___, 137 S. Ct. 2291 (2017).

¶ 26     Although we agree with our colleagues that evidence of a constitutionally invalid prior conviction to establish a predicate offense for a subsequent conviction is neither unconstitutional nor barred by the relevant statutory text, it now falls to the legislature to decide whether that is right. To be sure, the plight of an armed felon facing a lengthy sentence is likely to garner little sympathy. But the scenario presented by this case and others like it is troubling on a broader level. Conduct other than the possession of firearms was once criminalized and is now recognized as protected (see, *e.g.*, *Loving v. Virginia*, 388 U.S. 1, 7-12 (1967) (state laws criminalizing interracial marriage); *Roe v. Wade*, 410 U.S. 113, 164 (1973) (criminal abortion statutes). *Texas v. Johnson*, 491 U.S. 397, 420 (1989) (state prohibitions on desecrating the American flag); *Lawrence v. Texas*, 539 U.S. 558, 577-79 (2003) (state laws criminalizing same-sex sexual activity)). It strikes us as wholly uncontroversial that there must be a legislative safeguard to prevent the continued imposition of collateral consequences on individuals based on constitutionally invalid prior convictions.

¶ 27     The solution need not be an elaborate one. For example, the application notes to the federal sentencing guidelines, which assess "criminal history points" based on a defendant's previous convictions, provide as follows:

> "Reversed, Vacated, or Invalidated Convictions.—Sentences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or (B) *have been ruled constitutionally invalid in a prior case* are not to be counted." (Emphasis added.). U.S. Sentencing Guidelines Manual § 4A1.2 cmt. n.6. (U.S. Sentencing Comm'n 2016).

The Seventh Circuit has accordingly held that it is improper for a district court to assign points for a defendant's prior conviction under the portion of the AUUW statute struck down in *Aguilar*. See, *e.g.*, *United States v. Jenkins*, 772 F.3d 1092, 1098 (7th Cir. 2014).

¶ 28     As other members of this court have recognized, there is a significant injustice in placing the burden on a criminal defendant to clear his record of an unconstitutional conviction in order to avoid collateral consequences of that conviction. As the specially concurring justice in *People v. Spivey* stated:

"We cannot realistically expect the public to read judicial pronouncements and seek their own justice without assistance, or depend on defense attorneys to hunt up their old clients who might be affected by *Aguilar*. And why should criminal defendants—often poor, struggling, jobless, dependent on public funding for their defenses, unsophisticated, and mostly black or brown—bear the burden to file the necessary paperwork for vacating their convictions, when those convictions were caused by a legislature passing an ultimately unconstitutional statute?" *People v. Spivey*, 2017 IL App (1st) 123563, ¶ 24 (Hyman, J., specially concurring).

¶ 29    These concerns are greatly amplified where, as here, we are compelled by the legal principles espoused in binding precedent to extend the collateral consequences of an unconstitutionally void statutory provision to situations involving truly life-altering consequences for criminal defendants. The maximum sentence for UUWF—10 years of imprisonment for a first offense and 14 years for a second—pales in comparison to both the 30-year maximum sentence that a defendant faces on an AHC charge and the 60-year maximum sentence available on an extended-term sentence for that charge. Compare 720 ILCS 5/24-1.1(e) (West 2012), with 720 ILCS 5/24-1.7(b) (West 2012), 730 ILCS 5/5-4.5-25(a) (West 2012), and 730 ILCS 5/5-8-2(a) (West 2012).

¶ 30    Accordingly, we join those of our colleagues who have called for a legislative solution to this troubling situation. See *People v. Somerville*, 2017 IL App (1st) 132202-UB, ¶ 17 ("we incorporate the views expressed in both the majority opinion and special concurrence in [*Spivey*], regarding the need for a legislative solution to continuing effects of convictions under the statute found unconstitutional and void *ab initio* in *Aguilar*"); *Spivey*, 2017 IL App (1st) 123563, ¶ 15 (majority opinion) ("the author agrees with the special concurrence that the ripple effects of *Aguilar* and *McFadden* are best resolved by the legislature"); *id.* ¶ 25 (Hyman, J., specially concurring) ("[t]he legislature should consider whether it is right that these old convictions, based on an unconstitutional statute, may be used to create 'felon status' in subsequent prosecutions"); *McGee*, 2017 IL App (1st) 141013-B, ¶ 33 (Hyman, P.J., specially concurring) (same).

¶ 31                                    B. One-Act, One Crime

¶ 32    Mr. Smith's convictions for AHC and UUWF are both based on the same physical act: his unlawful possession of a single firearm on October 25, 2013. Mr. Smith contends, and the State agrees, that his conviction for UUWF must therefore be vacated in accordance with the one-act, one-crime rule. Pursuant to that rule, when a defendant is convicted of more than one offense for the same physical act, a "sentence should be imposed on the more serious offense and the less serious offense should be vacated." *People v. Artis*, 232 Ill. 2d 156, 170 (2009). "Pursuant to Supreme Court Rule 615(b), this court may correct the mittimus without remanding the case to the trial court." *People v. Pryor*, 372 Ill. App. 3d 422, 438 (2007) (citing Ill. S. Ct. R. 615(b)). Accordingly, we vacate Mr. Smith's conviction for UUWF and correct the mittimus to reflect a single conviction for AHC and a corresponding sentence of six years, plus three years of MSR. As there is nothing in the record indicating that the vacated convictions had any effect on the separate sentence Mr. Smith received for AHC, it is unnecessary for us to remand for resentencing. *People v. Shelton*, 252 Ill. App. 3d 193, 209 (1993).

CONCLUSION

For the foregoing reasons, we affirm Mr. Smith's AHC conviction and vacate his UUWF conviction.

Affirmed in part and vacated in part; mittimus corrected.

JUSTICE HARRIS, specially concurring:

I concur with my authoring colleague in holding that *McFadden* and *Custis* control the result in this case and therefore affirm Mr. Smith's AHC conviction and vacate his UUWF conviction. Additionally, I concur in urging a legislative solution to prevent the imposition of collateral consequences based on constitutionally invalid prior convictions.

However, I do not join in paragraphs 27 through 30 of the opinion, nor the statements, suggestions, or quote from the concurring opinion in *People v. Spivey*, 2017 IL App (1st) 123563, contained therein. This discussion is *dicta* and not necessary for our determination here.